TERRENCE COLLINGSWORTH
(DC Bar # 471830)
International Rights Advocates
621 Maryland Ave NE
Washington, D.C. 20002
Tel: 202-543-5811
E-mail: tc@iradvocates.org

*Counsel for Plaintiffs*

### UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF COLUMBIA
_____

| | |
|---|---|
| JANE DOE 1, Individually and on behalf of Proposed Class Members; JOHN DOE 1, Individually and on behalf of Proposed Class Members; JOHN DOE 2, Individually and on behalf of Proposed Class Members; JENNA ROE 3, Individually and on behalf of Proposed Class Members; JAMES DOE 4, Individually and on behalf of Proposed Class Members; JOHN DOE 5, Individually and on behalf of Proposed Class Members; JENNA DOE 6, Individually and on behalf of Proposed Class Members; JANE DOE 2, Individually and on behalf of Proposed Class Members; JENNA DOE 7, Individually and on behalf of Proposed Class Members; JENNA DOE 8, Individually and on behalf of Proposed Class Members; JOHN DOE 9, Individually and on behalf of Proposed Class Members; JENNA DOE 10, Individually and on behalf of Proposed Class Members; JENNA DOE 11, Individually and on behalf of Proposed Class Members; JANE DOE 3, Individually and on behalf of Proposed Class Members; JOHN DOE 12, Individually and on | **Case No. CV:**<br><br><br>**CLASS COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES**<br><br><br>**JURY TRIAL DEMANDED** |

1

behalf of Proposed Class Members;   and
JOHN DOE 13, Individually and on
behalf of Proposed Class Members; all
Plaintiffs C/O 621 Maryland Ave. NE,
Washington, D.C. 20002

        Plaintiffs,

  v.

APPLE INC. 1 Infinite Loop Cupertino,
CA 95014;  ALPHABET, INC. 1600
Amphitheatre Parkway, Mountain View,
California 94043; MICROSOFT, INC., 1
Microsoft Way, Redmond WA 98052;
DELL TECHNOLOGIES, INC., 1 Dell
Way, Round Rock, TX 78682;  and
TESLA, INC., 3500 Deer Creek Rd,
Palo Alto, CA 94304.

        Defendants.

# I.  NATURE OF THE ACTION

1.     Defendants Apple Inc. ("Apple"), Alphabet, Inc. ("Alphabet")(which is

the parent company of Google LLC)("Google"), Dell Technologies Inc. ("Dell"),

Microsoft Inc. ("Microsoft"), and Tesla Inc. ("Tesla") are knowingly benefiting

from and aiding and abetting the cruel and brutal use of young children in

Democratic Republic of Congo ("DRC") to mine cobalt, a key component of

every rechargeable lithium-ion battery used in the electronic devices these

companies manufacture. The young children mining Defendants' cobalt are not

merely being forced to work full-time, extremely dangerous mining jobs at the

expense their educations and futures; they are being regularly maimed and killed by

tunnel collapses and other known hazards common to cobalt mining in the DRC.

The following photo is of Plaintiff John Doe 5's crushed legs. He was mining

cobalt in a tunnel with no supports for Congo Dongfang Mining, which is part of

Huayou Cobalt, which sells cobalt to Defendants Apple and Microsoft.  He is

typical of the young men maimed by cobalt mining in the DRC, where production

has soared under extremely primitive conditions to meet the demand for cobalt

caused by the tech boom led by Defendants.



Plaintiff John Doe 5's crushed legs

2.      Defendants Apple, Alphabet, Dell, Microsoft, and Tesla are merely the

latest to join the list of rapacious exploiters that have given the DRC a particularly

horrific history of being pillaged and plundered and its people brutalized and

exploited. The area that is now the DRC had a relatively large population and was fertile ground for the slave traders. Estimates are that between the 16th and 19th centuries, several million slaves were taken from the Congo basin alone. In the mid-19th century, when slavery was finally made illegal in most of the world, the Congo received a brief respite. However, as industrialization began in earnest, a new breed of greedy exploiters returned to Africa to brutalize and enslave people in their home countries to extract natural resources. In the late 1880's, King Leopold II of Belgium seized the Congo as his personal private property in his bid to be a colonial power. While purporting to bring Christianity and civilization to the "Congo Free State", he instead deployed a brutal private army to impose a system of forced labor through strict quotas to compel villagers to deliver ivory to his collectors. Then, the rubber craze hit and, unfortunately for the people of the Congo, the forests of the Congo grew natural rubber trees. Leopold imposed a second brutal quota system on villagers to harvest raw latex to make rubber. Villages that did not cooperate were destroyed and noncompliant workers were punished with amputation by machete or execution. The horrors of this period are graphically depicted in Adam Hochschild's book, ***King Leopold's Ghost***, as well as in Joseph Conrad's ***Heart of Darkness***.

3.     Shortly before Leopold's death in 1909 he sold the Congo Free State to the Belgian state, a transaction that merely changed the beneficiaries of the brutal exploitation of the people and resources of the Congo. When Independence finally

came to the DRC[1] in 1960, the people then suffered through some of the most corrupt leaders imaginable. In succession, Mobutu Sese Seko, Laurent-Désiré Kabila, and Joseph Kabila, each stole more than the last while the people of the DRC lived in extreme poverty.

4.      The modern tech boom brought on a new wave of brutal exploitation to the people of the DRC. The DRC is particularly rich in many minerals needed for the manufacture of the various products made by Defendants Apple, Alphabet, Dell, Microsoft, and Tesla. The DRC is rich in tin, copper, tungsten, gold, and tantalum, but these minerals are widely available in other places. On the other hand, approximately two-thirds of the global supply of cobalt is mined in the "copper belt" region of Haut-Katanga and Lualaba Provinces in the DRC. Cobalt is a key component of every rechargeable lithium-ion battery in all of the gadgets made by Defendants and all other tech and electric car companies in the world,[2] that has brought on the latest wave of cruel exploitation fueled by greed, corruption and indifference to a population of powerless, starving Congolese people.

5.      The Plaintiffs here are a representative group of children who were forced by extreme poverty to leave school and pursue the only economic option in their

---

[1] The country was first called the Republic of Congo, then the DRC, then Zaire, then back to the present name of DRC.
[2] Plaintiffs have brought suit against a first group of companies, Defendants Apple Inc., Alphabet Inc., Dell Inc., Microsoft Inc., and Tesla, based on a number of factors. Plaintiffs are conducting additional research and expect to add others using cobalt from the DRC that is mined by young children performing hazardous work and facing extreme danger.

region of the DRC -- become "artisanal" cobalt miners. They are officially referred to as "artisanal" miners to dress up the fact that this means they are working in a large informal sector of people, including young children, who go to the areas where cobalt is found and use primitive tools to dig and tunnel for cobalt without any safety equipment and without any structural support for the tunnels. Major tunnel collapses are common. Miners are regularly maimed or killed when a tunnel collapses, and frequently, the bodies of those trapped in the darkness of rubble are never recovered.

6.      Defendants Apple, Alphabet, Dell, Microsoft, and Tesla are knowingly benefiting from and providing substantial support to this "artisanal" mining system in the DRC. Defendants know and have known for a significant period of time the reality that DRC's cobalt mining sector is dependent upon children, with males performing the most hazardous work in the primitive cobalt mines, including tunnel digging. These boys are working under stone age conditions for paltry wages and at immense personal risk to provide cobalt that is essential to the so-called "high tech" sector, dominated by Defendants and other companies.  For the avoidance of doubt, every smartphone, tablet, laptop, electric vehicle, or other device containing a lithium-ion rechargeable battery requires cobalt in order to recharge. Put simply, the hundreds of billions of dollars generated by the Defendants each year would not be possible without cobalt mined in the DRC.

7.       Plaintiffs Jane Doe 1, based on the death in a mining accident when he was a minor child of her nephew and legal dependent, James Doe 1; John Doe 1, who was severely injured in a mining accident when he was a minor child; John Doe 2 based on the death of his son, James Doe 2, in a mining accident when he was a minor child; Jenna Roe 3, on behalf of her minor child son, John Doe 3, who was severely injured in a mining accident; James Doe 4, on behalf of his minor child son, John Doe 4, who was severely injured in a mining accident; John Doe 5, who was severely injured in a mining accident when he was a minor child; Jenna Doe 6, on behalf of her minor son John Doe 6, who was severely injured in a mining accident; Jane Doe 2, based on the death in a mining accident when he was a minor child of her brother and legal dependent, Joshua Doe 2; Jenna Doe 7, on behalf of her minor son John Doe 7, who was severely injured in a mining accident; Jenna Doe 8, on behalf of her minor son John Doe 8, who was severely injured in a mining accident; John Doe 9, who was severely injured in a mining accident when he was a minor child; Jenna Doe 10, on behalf of her minor son John Doe 10, who was severely injured in a mining accident; Jenna Doe 11, on behalf of her minor son John Doe 11, who was severely injured in a mining accident; Jane Doe 3, based on the death in a mining accident when he was a minor child of her son James Doe 3; John Doe 12 based on the death in a mining accident when he was a minor child of his younger brother and legal dependent, James Doe 12; and John Doe 13, who was severely injured in a mining accident when he was a minor child, bring this action against

7

Defendants on behalf of themselves and all other similarly situated current and former child workers who are required to perform extremely hazardous work in cobalt mining operations within Haut-Katanga and Lualaba Provinces of the DRC which include the cobalt mining areas of Kolwezi, Fungurume, Likasi, Kambove, Kipushi, and Lubumbashi. Plaintiffs assert claims for forced child labor in violation of the Trafficking Victims Protection Reauthorization Act ("TVPRA"), 18 U.S.C. § 1595 *et. seq.* Plaintiffs also seek relief based on common law claims of unjust enrichment, negligent supervision, and intentional infliction of emotional distress.

8.      Plaintiffs herein are representative of the child cobalt miners, some as young as six years of age, who work in exceedingly harsh, hazardous, and toxic conditions that are on the extreme end of "the worst forms of child labor" prohibited by ILO Convention No. 182. Some of the child miners are also trafficked. Plaintiffs and the other child miners producing cobalt for Defendants Apple, Alphabet, Dell, Microsoft, and Tesla typically earn 2-3 U.S. dollars per day and, remarkably, in many cases even less than that, as they perform backbreaking and hazardous work that will likely kill or maim them. Based on indisputable research, cobalt mined in the DRC is listed on the U.S. Department of Labor's International Labor Affairs Bureau's List of Goods Produced with Forced and Child Labor.[3]

---

[3] US Department of Labor, List of Goods Produced by Child Labor or Forced Labor, available at www.dol.gov/ilab/reports/child-labor/list-of-goods.

9.      Further, the horrors of the plight of these children has been widely reported in the media. For example, on September 30, 2016, the Washington Post published a major expose by Todd Frankel, *Cobalt Pipeline, Tracing the path from deadly hand-dug mines in Congo to consumers' phones and laptops*,[4] which specifically discussed the willful ignorance of companies like Defendants that are purchasing DRC cobalt without regard to whether it was mined by children, like Plaintiffs herein, who are forced to perform hazardous labor.

10.      In addition, Siddharth Kara, who has been researching and reporting on this issue and is serving as an expert witness for the Plaintiffs in this case, published an October 12, 2018 article in The Guardian, *Is your phone tainted by the misery of the 35,000 children in Congo's mines?*[5] Kara has conducted an academic survey of working conditions in the southeastern provinces of the DRC and based on 303 completed cases Kara has learned, *inter alia*, that children under the age of 14 years earn an average of $0.81 per day, adult females earn an average of $1.02 per day, and adult males earn an average of $2.04 per day. Children are primarily coerced into cobalt mining work due to injury or death suffered by parents in cobalt mining, the inability to pay school fees, or population displacement when their home village is bulldozed to create space for a new industrial mining site. In an August 5, 2017 article in the Mail on Sunday by Barbara Jones, *Child miners aged four*

---

[4] https://www.washingtonpost.com/graphics/business/batteries/congo-cobalt-mining-for-lithium-ion-battery/?tid=lk_inline_manual_3
[5]   https://www.theguardian.com/global-development/2018/oct/12/phone-misery-children-congo-cobalt-mines-drc#img-1

*living a hell on Earth so YOU can drive an electric car*,[6] the author observes, "No one knows quite how many children have died mining cobalt in the Katanga region in the south-east of the country. The UN estimates 80 a year, but many more deaths go unregistered, with the bodies buried in the rubble of collapsed tunnels. Others survive but with chronic diseases which destroy their young lives. Girls as young as ten in the mines are subjected to sexual attacks and many become pregnant."

11.     In 2016, Amnesty International published a major report on the horrific conditions for child laborers mining cobalt in the DRC, *This Is What We Die For – Human Rights Abuses in the Democratic Republic of Congo Power the Global Trade in Cobalt*. (hereinafter the "Amnesty Report").[7] The report states "[i]t is widely recognized internationally that the involvement of children in mining constitutes one of the worst forms of child labour, which governments are required to prohibit and eliminate. The nature of the work that [Amnesty's] researchers found that the children do in artisanal cobalt mining in the DRC is hazardous, and likely to harm children's health and safety."[8] The Amnesty Report further states, "[i]t is no secret that children mine cobalt in the DRC. The US Department of Labor has listed it as a good produced by child labour since at least 2009. Several non-governmental organisations (NGOs) have also published studies on child labour in Katangan

---

[6] https://www.dailymail.co.uk/news/article-4764208/Child-miners-aged-four-living-hell-Earth.html
[7] www.amnesty.org
[8] *Id*. at 6.

mines. UNICEF estimated in 2014 that approximately 40,000 boys and girls work in all the mines across the whole of the former province, many of them involved in cobalt mining. In 2013, World Vision published a detailed study of children working in the artisanal mines of Kambove."[9]

12.　Plaintiffs' counsel and their research team have independently traveled to the cobalt mining areas of DRC and have documented and photographed the brutal conditions for children mining cobalt for use by Defendants. The research team includes Siddharth Kara, a leading expert on modern slavery and child labor. He has documented several thousand slaves and child laborers in more than fifty countries across nineteen years of research and advises the United Nations, several governments, charitable foundations, and non-profit organizations on anti-slavery policy and law. In addition to his article on cobalt mining in the DRC published in the **Guardian**,  Kara is the author of three books on modern slavery and human trafficking, *Modern Slavery: A Global Perspective* (Columbia University Press, 2017), *Bonded Labor: Tackling the System of Slavery in South Asia* (Columbia University Press, 2012), and *Sex Trafficking: Inside the Business of Modern Slavery* (Columbia University Press, 2009). Kara has also published two academic reports - "Tainted Garments" (UC Berkeley, 2019) and "Tainted Carpets" (Harvard University, 2014) – that document forced and child labor at the bottom of specific global supply chains.

---

[9] *Id*. at 28 (footnotes omitted).

Kara has taken two trips to the DRC and has conducted extensive research on forced labor and child labor in cobalt mining.  Kara holds academic positions at the Harvard Kennedy School, Harvard School of Public Health, and the University of California, Berkeley.

13.     The research team also includes Dr. Roger-Claude Liwanga, a DRC national with extensive experience researching child labor and trafficking in his home country. He is a fellow on Human Trafficking and Forced Labor with the FXB Center for Health and Human Rights at Harvard University. Since fall 2017, Dr. Liwanga has been adjunct professor at Emory Law, where he teaches the Child Protection and International Human Rights course. Among his relevant publications, he recently published a book chapter, in **_Research Handbook on Child Migration_** (Edward Elgar Publishing, 2018), and a book, **_Child Mining in an Era of High-Technology: Understanding the Roots, Conditions and Effects of Labor Exploitation in the Democratic Republic of Congo_** (Alpha Academic Press, 2017). Previously, Dr. Liwanga published a June 26, 2013 article in _The CNN_, _Child miners face death for tech,_[10] and produced a short documentary, _Children of the Mines_, which was once aired on WCVB-ABC TV in Boston on January 12, 2014.[11]

---

[10] http://thecnnfreedomproject.blogs.cnn.com/2013/06/26/child-miners-face-death-for-tech/
[11] https://www.wcvb.com/article/january-12-2014-child-miners-in-the-democratic-republic-of-the-congo/8200142

14.    The following are photos of young children, none of whom are Plaintiffs in this case, mining cobalt in DRC that were taken by Plaintiffs' research team during their 2017-19 trips to DRC:















15.    There is no question that Defendants have specific knowledge that the

cobalt mined in DRC they use in their various products includes cobalt that was

produced by children working under extremely hazardous conditions, that serious

mining accidents are common due to the primitive conditions and complete lack of

safety precautions in the mines, and that hundreds, if not thousands, of children

have been maimed or killed to produce the cobalt needed for the world's modern

tech gadgets produced by Defendants and other companies. Defendants are

knowingly participating in, supporting, and providing the essential market for cobalt

that has caused the explosion of production by young children. Indeed, taking a

major page from the corporate coverup guide, Defendants Apple, Alphabet, Dell,

and Microsoft have joined and supported "model" mining programs in DRC to create the false impression that they have acted to prevent the known horrors of cobalt mining in the DRC by children.

16.     Rather than taking meaningful action to prevent further deaths and maiming of children in the DRC cobalt mines, Defendants Apple, Alphabet, Dell, and Microsoft and Tesla also claim to have "voluntary programs" **to stop themselves** from using prohibited child labor and forced labor in their supply chains. *See, e.g.*, Apple's *2018 Statement on Efforts to Combat Human Trafficking and Slavery in Our Business and Supply Chain*,[12] which states at p. 5:

> Apple's program to prevent child labor in its DRC supply chain is based on Apple's belief that empowering independent voices in the supply chain is critical to identifying, assessing, and remedying risks related to human trafficking and involuntary labor. In 2018, we continued to provide funding to the Fund for Global Human Rights, an organization that supports local human rights defenders and local activists in multiple countries, including in the DRC. Apple also continued to support the International Tin Association's International Tin Supply Chain Initiative whistleblowing mechanism in the DRC that allows people to anonymously voice concerns in their local language related to the extraction, trade, handling, and export of minerals so allegations of misconduct can be surfaced and reported.

17.     Apple's "program" is typical for the industry. International Rights Advocates, counsel for Plaintiffs, has detailed research on the nearly identical "programs" announced by co-Defendants Alphabet, Dell, Microsoft and Tesla, as

---

[12]     https://www.apple.com/supplier-responsibility/pdf/Apple-Combat-Human-Trafficking-and-Slavery-in-Supply-Chain-2018.pdf (last visited September 6, 2019).

well as most other tech companies using cobalt mined in the DRC. The fact that these programs were announced is merely evidence that the companies know they have serious child labor and forced labor problems in their DRC supply chains for cobalt and they hoped that this minimal first step would postpone solving the problem. If the stakes were not so serious for children currently mining cobalt for the benefit of these tech giants, programs like Apple's would merely be laughable. The DRC is one of the most repressive countries in the world, but, ***until they are forced to do better***, Apple and the other companies are relying on largely illiterate, desperately poor, and exceedingly vulnerable people to figure out Apple's complaint mechanism and report supply chain violations when they certainly cannot afford personal computers or iPhones and they do not have internet or cell phone access to connect to the outside world within the context of a violent regime that does not tolerate dissent and an unregulated industry that could retaliate with impunity against any whistleblowers.

## II.    JURISDICTION AND VENUE

18.    Plaintiffs bring their claims in this judicial district in the United States because such claims cannot be maintained in their home country of DRC, as currently there is no law in DRC whereby Plaintiffs could seek civil damages for their injuries against the major end users of cobalt operating outside of the country.

Further, the claims cannot be brought in DRC because the judicial system is notoriously corrupt, virtually non-functioning, and would not offer any effective remedy for Plaintiffs' claims. It is also likely that both Plaintiffs and their attorneys would be placed in danger due to the ongoing civil unrest in DRC and the demonstrable hostility in the DRC anyone who openly criticizes the government or is viewed as attacking the mining industry. Further, Plaintiffs bring their claims in the United States as the United States has provided a forum for such human rights lawsuits with the passage of the TVPRA amendments in 2013, which explicitly provide for extraterritorial jurisdiction. *See* 18 U.S.C. § 1596. Finally, the policymaking that facilitated the harms Plaintiffs suffered was the product of decisions made in the United States by Defendants. Thus, Plaintiffs do not have the "practical ability to litigate" their claims in DRC. *See Reid-Walen v. Hansen*, 933 F.2d 1390, 1401 (8th Cir. 1991).

19.     This case is brought under the TVPRA, 18 U.S.C. § 1596, for violations of 18 U.S.C. §§ 1581, 1584, 1589, and 1590, and the offenders are nationals of the United States or present in the United States, irrespective of nationality, providing this Court with federal question jurisdiction pursuant to 28 U.S.C. § 1331. 18 U.S.C. § 1596 explicitly grants United States courts extraterritorial jurisdiction for Plaintiffs' TVPRA claims, all of which accrued after December 23, 2008, the effective date of § 1596.

20.     Plaintiffs' state law claims arise out of the same case or controversy as their federal law claims and involve a common nucleus of operative facts. All injuries Plaintiffs suffered were the result of their being trafficked and subjected to harsh conditions performing forced labor. Thus, this Court also has supplemental jurisdiction over Plaintiffs' state law claims under 28 U.S.C. § 1367.

21.     This Court also has jurisdiction pursuant to 28 U.S.C. § 1332 (a)(2) based on diversity of citizenship. All Plaintiffs are foreign nationals and citizens and residents of DRC and each of their claims for damages exceeds $75,000. All Defendants are U.S. corporations headquartered in the United States.

22.     This Court has personal jurisdiction over Defendants Apple, Alphabet, Dell, Microsoft and Tesla because they are all U.S. resident companies and they do substantial and continuous business within the District of Columbia. The long arm statute of the District of Columbia, D.C. Code § 13-423(a)(1), uses the same standard as the due process clause of the Constitution, whether there are "minimum contacts." "Section (a)(1)'s 'transacting any business' clause generally has been interpreted to be coextensive with the Constitution's due process requirements and thus to merge into a single inquiry." *GTE New Media Servs. Inc. v. BellSouth Corp.*, 199 F.3d 1343, 1347 (D.C. Cir. 2000). "[The] 'transacting any business' clause has been interpreted to provide jurisdiction to the full extent allowed by the Due Process Clause." . . . "Therefore, the 'statutory and constitutional jurisdictional questions, which are usually distinct, merge into a single inquiry here.'" *United States v. Ferrara*, 54 F.3d 825, 828

(D.C. Cir. 1995). *See also Toumazou v. Turkish Republic of Northern Cyprus*, 71 F. Supp. 3d

7, 15-16 (D.D.C. 2014) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474-75

(the "transacting business" requirement of D.C. Code § 13-423(a)(1) requires that a

defendant "'purposefully avail[ed] itself of the privilege of conducting business within

the forum state'" and that it has established sufficient minimum contacts in the forum

state so that it 'should reasonably anticipate being hailed into court there.'"). All of the

Defendants conduct significant business in the District of Columbia such that they

have well more than the "minimum contacts" required for this Court to exercise

personal jurisdiction over them.

   23.    Under 28 U.S.C. §§ 1391(b)(3) and (c)(2) venue over the collective

Defendants is proper in this judicial district. Based on subsection (b)(3), venue is

proper because there is no single judicial district where all Defendants are

headquartered, and this judicial district is one where all Defendants are subject to

personal jurisdiction. Further, based on subjection c(2), all Defendants are deemed to

reside in this judicial district because they are all subject to personal jurisdiction in this

district.

### III.   PARTIES

A.  **Former Child Cobalt Miners**

24. Plaintiffs bring this action using pseudonyms due to fear of retaliation against them and their families by persons, including corrupt government officials, who financially benefit in DRC from forced child labor mining cobalt. Plaintiffs' case not only threatens to expose criminalized elements within the cobalt sector, but also to dismantle the source of its significant profits: cheap labor of abused child workers. For this reason, Plaintiffs' lives would be in great danger if their names were exposed to the public.

25. Jane Doe 1 was the legal guardian of her nephew, James Doe 1, who died while working in a cobalt mine on April 16, 2018. He was born March 17, 2001 so he was 17 when he died. He started working as a cobalt miner at a very young age. He was forced to drop out of school after the second grade because his family could not pay the $6.00 monthly school fees charged by the government school since the government does not provide sufficient resources to operate the school. James Doe 1 first started working as a young child as a surface digger picking up tailings at a cobalt mine and selling what he found for small amounts of money. At the age of 15, he joined a group of other boys and young men and began digging tunnels at a copper-cobalt mine that was originally operated by the state-run entity, Gécamines. The mine

was Mashhamba East, near the village of Kapata. At the time of James Doe 1's death, the mine was operated by Kamoto Copper Company (KCC), which is owned and controlled by mining giant Glencore plc (hereinafter "Glencore"), which was founded by convicted tax evader and illegal trader Marc Rich and is known for widespread violations of human rights and environmental laws, as well as participation in rampant corruption all over the world. In a venture that is described in paragraphs 68-77, *infra*, Glencore sells cobalt to Umicore, NV "(hereinafter "Umicore"), a Belgian company that had its origins as a participant in King Leopold's brutal exploitation of the Congo. Umicore processes the cobalt mined by Glencore with the forced labor of Plaintiffs and thousands of other child miners in the DRC, and then supplies the refined cobalt to Apple, Alphabet, Samsung SDI, Microsoft and LG Chem (which supplies Dell and Tesla) for use in cobalt-containing batteries. James Doe 1's weekly earnings of $17-$18 were a major source of support for Jane Doe 1 and the other seven children who live with her. The day that James Doe 1 died, he was working inside a tunnel at the mine. Other children began running out of the mine because they were scared by some soldiers who were entering. James Doe 1 also began to leave the mine, but the tunnel he was in collapsed and killed him. Jane Doe 1 also has a cousin who was killed in a mine collapse on Friday, September 21, 2019 at a mining site called, Kamilombe, operated by Taruga Minerals of Australia. She is devastated by the death and injury she has experienced and stated that "our children are dying like dogs."

26. John Doe 1 was born on March 7, 2001. He went to school for four years and then had a drop out because his family could not afford the $6.00 monthly school fees. He was nine years old when he quit school and went to work as a surface digger in the large mining area near the village of Kapata picking up loose rocks containing cobalt and selling them. When he was 15, he went to work at the Lac Malo B5 mine, which is operated by Kamoto Copper Company (KCC), which is owned and controlled by Glencore, which sells cobalt to Umicore. Umicore then processes the cobalt mined by Glencore with the forced labor of Plaintiffs and thousands of other child miners in the DRC, and then supplies the refined cobalt to Apple, Alphabet, Samsung SDI, Microsoft and LG Chem (which supplies Dell and Tesla) for use in cobalt-containing batteries. John Doe 1's primary job was working as a human mule. He worked on top of a steep mountain of unsteady rock rubble where older miners would fill bags with rocks containing cobalt, each bag weighing at least 30 kilograms. The bags would be placed on his back by the miners and then he would attach a head strap to hold the bag on his back. He would then walk down to the bottom of the mountain, rinse the rocks in Lac Malo, and then carry the bag to the depot where the rocks were collected, covering a distance of over 700 meters. For each round trip he was paid 10-15 cents (U.S.) and would typically do 7 trips per day, earning about 70-95 cents (U.S.) per day.  Two of his three brothers also worked in similar jobs at KCC mines around Kapata. They all gave their earnings to their parents to support the family. On September 15, 2016, while walking down the mountain with a bag of

cobalt on his back, John Doe 1 stepped down and fell into a tunnel. He fell 5-6 meters and hit the rock floor at the bottom of the tunnel. He lost consciousness and some workers pulled him out of the hole and contacted his parents. His mother and father came to the mine and saw his body lying on the ground, where he had been left alone. They sat John Doe 1 on a bicycle and walked him to the local hospital. They could do nothing for him there, so they went to a hospital across the border in Zambia. There, the doctors examined him and found that he had broken his spine in 3 different places. John Doe 1 and his parents stayed in Zambia for a year while the boy received treatment for the physical wounds on his body. The limited facilities in Zambia did little to improve the damage to John Doe 1's spine. He is now completely paralyzed from his chest down and he can barely use his arms. He is unable to help himself, so his parents are now acting as his caregivers. He has no money for further medical treatment, and he will never be able to walk again. He still feels pain on a daily basis. His mother exclaimed in distress that she is "heartbroken every time I see children of my son's age playing or going to school."

27. John Doe 2 is the father of James Doe 2 who died in a mining accident on January 14, 2019.  James Doe 2 was born on April 13, 2002 so he was 16 when he died. John Doe 2 was a carpenter and in 2013 he had a serious injury at work that disabled him such that he could not work anymore. His wife left him with their 8 children because he could no longer earn money. After the accident, James Doe 2 had to drop out of school in grade 6. His father could no longer pay the monthly school

fees of roughly $6.00. In 2011, when he was 11 years old, James Doe 2 went to work to support his family since his father could not work and his mother had deserted the family. He also took his 3 younger brothers with him to work as artisanal miners picking up loose rocks of cobalt to sell. They went to an industrial mining site, Tilwezembe about 25 kilometers east of Kolwezi, near the village of Mupanji next to the Lualaba River. The mineral rights of this mine are owned and controlled by Glencore, which sells cobalt to Umicore. Umicore then processes the cobalt mined by Glencore with the forced labor of Plaintiffs and thousands of other child miners in the DRC, and then supplies the refined cobalt to Apple, Alphabet, Samsung SDI, Microsoft and LG Chem (which supplies Dell and Tesla) for use in cobalt-containing batteries. Based on the Congolese Mining Code, only Congolese nationals can work as artisanal miners, so Glencore arranged to set up a sham cooperative, CMKK (Coopérative Minière Maadini kwa Kilimo), with Congolese nationals as leaders. CMKK then put a Lebanese man known as "Ismail" in charge of buying the output of the artisanal miners at Tilwezembe to sell to Glencore. James Doe 2 worked at the mine 6 days a week and earned $1.50-2.00 a day. On January 14, 2019, James Doe 2 was working inside a tunnel that collapsed. He died in the collapse, and two other children were buried alive as well. John Doe 2 was called to come and collect his son's body, which he did. John Doe 2 lost his eldest son and the primary breadwinner of his family.

28. John Doe 3 was born on December 24, 2002. He was severely injured in a mining-related accident on July 3, 2019. Because he is a minor, his mother and sole legal guardian, Jenna Roe 3 brings this claim on his behalf. Jenna Roe 3's husband died many years ago. She has 7 children and John Doe 3 is the only son. He finished grade 4 in school and then had to drop out because his mother could not pay his school fees of about $6.00 per month. He was about 11 when he left school. He did odd jobs and helped his mother with various odd jobs, including selling vegetables. When he was 14, John Doe 3 went to work in cobalt mining. He was approached by a labor broker, Mr. X, who arranged for him to work for a mine operated by and controlled by CDM (Congo Dongfang Mining), which is a wholly-owned subsidiary of Zhejiang Huayou Cobalt (hereinafter "Huayou Cobalt"), a notorious Chinese mining company that openly uses child miners in the DRC as part of its supply chain venture described in paragraphs 68-77, *infra*. Huayou Cobalt sells cobalt to Defendants Apple, Dell, and Microsoft, and likely to other Defendants.  CDM and its local sister company COMUS (Compagnie Miniere de Musonoi) mine and process crude cobalt, which is then exported to Huayou Cobalt in mainland China.  Mr. X organized 9 boys to work for him, including John Doe 3, and provided them with 3 motorbikes, one for each team of 3. The boys were to ride each day 45 kilometers from their village of Tshala to a mine near Kapata. Once each team filled 3 bags with cobalt rocks, one member of each team would haul the 3 bags, each weighing 70-80 kilograms, to buying house number 555 in Musompo (operated by Chinese men), and

then return to the mine to continue working. John Doe 3 and the others were required to give all of the proceeds of their work to Mr. X, who paid them collectively 130,000 Congolese Franc (about $81.00), or roughly $9 per week per person. Mr. X kept the rest of the money and appeared to have some connection to the government because he had Republican Guard security forces around him at times. On July 3, 2019, John Doe 3 was leaving the mine area on his motorbike loaded with 3 bags of cobalt with a total weight of at least 210 kilograms. As he was merging onto the main road he was hit by a large cobalt transport truck. He woke up the next day in the Gécamines hospital. His left leg had been amputated because it was completely smashed in the accident.  The driver of the truck fled the scene and no assistance of any sort was provided by anyone to help John Doe 3 with his medical bills, so he owes the hospital significant funds. John Doe 3 was the primary breadwinner for his family so now he, his mother, and 6 sisters are completely destitute and are reliant on help from family to survive. He lives in constant pain from the injury.



John Doe 3

29. James Doe 4  brings a claim on behalf of his minor son John Doe 4 , who was severely injured in a mining accident at the Tilwezembe mining site, which is owned and controlled by Glencore, which sells cobalt to Umicore. Umicore then processes the cobalt mined by Glencore with the forced labor of Plaintiffs and thousands of other child miners in the DRC, and then supplies the refined cobalt to Apple, Alphabet, Samsung SDI, Microsoft and LG Chem (which supplies Dell and Tesla) for use in cobalt-containing batteries. John Doe 4 went to school until the third grade, when he was forced to drop out. His family could not afford the school fees of about $6.00 per month. This was in 2014. He stayed at home until 2016, and then he went to work at the Tilwezembe mining site when he was 11 years old. This is near the village of Mupanji next to the Lualaba River. He worked in an open pit mining area at Tilwezembe. He worked in a team of 4 with 3 other young boys. There were three Chinese men who coordinated the work of the boys at the mine site, directed where they were to dig, and then bought the cobalt rocks the boys gathered. There was a sham Congolese cooperative at the site, CMKK, to create the impression of Congolese control. The Chinese men often cheated the boys by saying the cobalt rocks were of low quality and not worth anything. John Doe 4 usually made $1 a day for doing highly dangerous work. He brought the money home and gave it to his father to support the family. Including John Doe 4, there were 9 boys and 2 girls in the family. On May 7, 2019, John Doe 4 was digging in the pit with 5 other people when the pit wall collapsed on them. His elder brother, Robert Doe 4 died in the

same accident He was born February 8, 1994 and had been working at the mine since 2015. He leaves behind a wife and two children, one of whom was born after the accident.  John Doe 4 was taken to a small clinic nearby. His left leg was severely smashed, and he now has a metal bar inside to hold the bone in place. He is in constant pain and can no longer use the injured leg. He is unable to work as a result of the injury.



John Doe 4

30. John Doe 5 was born on April 15, 2002. He started working as an artisanal miner while he was still in school. He worked at a mine in Musonoi operated by and

controlled by CDM (Congo Dongfang Mining), which is wholly-owned by Huayou

Cobalt, which sells cobalt to Defendants Apple, Dell, and Microsoft, and likely to

other Defendants.  CDM and its local sister company COMUS (Compagnie Miniere

de Musonoi) mine and process crude cobalt, which is then exported to Huayou

Cobalt in mainland China. He arrived at the mine and worked from 5-7 am before

going to school. He was a surface digger and filled bags with cobalt rocks that he was

forced to sell to Chinese buying houses located on the mine site. John Doe 5 had to

quit school while in the 11th grade because he could no longer afford the $6.00

monthly school fees. He then started working full-time at the same CDM mine. He

worked in a team of 5 as tunnel diggers. They had to crawl Spiderman-like down a

narrow 50-meter shaft and then into a 100-meter tunnel horizontal to the surface as

they followed a vein of cobalt. They had to drag their cobalt rocks to the bottom of

the 50-meter hole, haul the rocks up, and then carry them in bags about another 100

meters to the buyers for paltry wages. On July 2, 2019, 40 people were gathered in a

chamber at the base of the entrance shaft packing their cobalt rocks into bags and

getting ready to climb out. The chamber ceiling collapsed on them. 35 people died on

the spot; five others, including John Doe 5, were taken to the hospital, where three

others died soon after. John Doe 5 was one of only two survivors. The dead included

many child miners. Both of John Doe's legs were entirely crushed. His right leg now

has an iron bar in it support the demolished bone; his left leg is still in a cast and the

extent of the damage is not known. His hip bones were also broken, and he will never

be able to walk again. He is in constant pain and will never be able to work. No one at the mine or the government provided any assistance to him and his family which is struggling to pay the bills for treatment.



John Doe 5

31. Jenna Doe 6 brings a claim on behalf of her minor son John Doe 6. John Doe 6 was born on August 8, 2002 and went to school to the 6th grade, when he had to drop out because his family could not afford the school fees. Before he quit school, he worked as a surface digger of cobalt for a few hours in the morning before school, and once he left school he worked full-time at the mine. At all times, he worked at the Tilwezembe mining site, which is owned and controlled by Glencore, which sells cobalt to Umicore. Umicore then processes the cobalt mined by Glencore with the forced labor of Plaintiffs and thousands of other child miners in the DRC, and then supplies the refined cobalt to Apple, Alphabet, Samsung SDI, Microsoft and LG Chem (which supplies Dell and Tesla) for use in cobalt-containing batteries. From 2013-16, he worked on a team of 6 boys and they did all tasks in the cobalt mining process: they dug and bagged the rocks, they washed them, and then they carried them to a buying site controlled by Ismail. At the start of 2017, Ismail forced John Doe 6 and his crew to start working under a "Sponsor," Chief Wali, otherwise Ismail would no longer buy their cobalt. Chief Wali forced them into a debt bondage situation where he would advance food and small funds and then deduct these "costs" from the proceeds of the sale of their cobalt. Often John Doe 6 and his crew were paid nothing for their work as Chief Wali told them they owed all the proceeds in costs. At most John Doe 6 earned about $2 per day for his work. Like most children working at the Tilwezembe mining site, John Doe 6 had to crawl Spiderman-like down a narrow 20-30-meter shaft and then into a 30-meter tunnel. He and his crew

would then dig into smaller tunnels off the main tunnel. They had to drag their cobalt rocks to the bottom of the shaft, haul the rocks up, and then carry them in bags about another 100 meters to the buyers. On November 15, 2018, he was in a chamber alone filling up bags with cobalt rocks and the ceiling collapsed and crushed his leg. The other members of his crew fled the site fearing a larger collapse of the main tunnel. When it was clear that the collapse was limited, they went back and dug John Doe 6 out of the rock rubble. They took him to a clinic near the mine, where they transferred him to the main hospital in Kolwezi. His left leg was completely crushed, and the doctors put in an iron bar to hold the bone together. He is in constant pain and can no longer walk on his left leg. He used to support his mother and now the family has lost that income. Jenna Doe 6 now sells vegetables to have some income. No one at the mine provided any assistance to John Doe 6. Chief Wali blamed him for the collapse saying he was practicing witchcraft.



John Doe 6

32. Jane Doe 2 brings a claim on behalf of her deceased brother, Joshua Doe 2, who died in a September 27, 2017 mining accident at the Tilwezembe mining site, which is owned and controlled by Glencore, which sells cobalt to Umicore. Umicore then processes the cobalt mined by Glencore with the forced labor of Plaintiffs and thousands of other child miners in the DRC, and then supplies the refined cobalt to Apple, Alphabet, Samsung SDI, Microsoft and LG Chem (which supplies Dell and Tesla) for use in cobalt-containing batteries. Joshua Doe 2's parents were both deceased and his elder sister, Jane Doe 2, was his guardian at the time of his death. Joshua Doe 2 went to school until the 6th grade and then dropped out because the family could not pay the school fees. He worked part-time at the mine in the mornings before school, and then worked full-time when he left school. Joshua Doe 2

worked at the mine though a "Sponsor" Guylain, who gathered children at Kayebela and organized them to work at the mine. On September 27, 2017, Jane Doe 2 received a call from an uncle who also worked at the Tilwezembe mine, telling her that Joshua Doe 2 had been crushed to death in a massive collapse of a tunnel at the mine. Joshua Doe 2 was one of 17 bodies taken to the morgue in Kolwezi; an unknown number remain buried in the rock rubble of the collapse. Joshua Doe 2 contributed his earnings to the family support.

33. Jenna Doe 7 brings this claim on behalf of her minor son John Doe 7. John Doe 7 was born on May 4, 2003. His father died in 2011. He went to school until the 6th grade, and then he had to quit because the family could no longer pay his school fees of approximately $6 per month.  He is the youngest child of eight. In January of 2018 he was recruited to work in the mine at Mashamba East near Kapata, which is controlled by Kamoto Copper Company (KCC), which is owned and  controlled by Glencore, which sells cobalt to Umicore. Umicore then processes the cobalt mined by Glencore with the forced labor of Plaintiffs and thousands of other child miners in the DRC, and then supplies the refined cobalt to Apple, Alphabet, Samsung SDI, Microsoft and LG Chem (which supplies Dell and Tesla) for use in cobalt-containing batteries. Presidential Guards had managed to gain control of access to the mine site and recruited children, including John Doe 7, to work there. From January 2018 until June 25, 2019, he essentially worked for the Presidential Guards clearly with the knowledge and consent of KCC. He worked in a group of 10 and each day the team

would dig and bag up to a ton of cobalt rock. They were required to give the bags to the Presidential Guard, and they would sell it to the buying houses located at the mining site and pay the 10 children about $12 per day. John Doe 7 learned from other miners that he could make more money if he sold his cobalt rock directly to the buyers, cutting out the Presidential Guard as middlemen. John Doe 7 then proposed a deal with the 5 Presidential Guard he had been working for – he would dig for them each day but would take a portion for himself to sell directly to the buyers himself. Four of the five agreed but a fifth did not. When John Doe 7 started walking away with a bag of the cobalt rocks he had dug that day, the guard who disagreed shot him in the back without warning. John Doe 7 woke up in the hospital. The bullet had entered through his back and exited near his left armpit. He was severely injured and had to stay in the hospital for 6 weeks. The guard who shot him was not held accountable for anything and John Doe 7's family for required to pay the hospital costs. He still suffers from pain of the injury and can no longer lift with his left arm.

34. Jenna Doe 8 brings this claim on behalf of her minor son, John Doe 8, who was born on January 4, 2004. He went to school until the 5th grade and then dropped out because the family could not pay the school fees. He is the middle of three boys in the family and has 2 sisters. While he was still in school, he worked for a few hours each morning at the Lac Malo B5 mine, which is operated by Kamoto Copper Company (KCC), which is owned and  controlled by Glencore, which sells cobalt to Umicore. Umicore then processes the cobalt mined by Glencore with the forced labor

of Plaintiffs and thousands of other child miners in the DRC, and then supplies the refined cobalt to Apple, Alphabet, Samsung SDI, Microsoft and LG Chem (which supplies Dell and Tesla) for use in cobalt-containing batteries. At that time, he picked up loose rocks and sold them to buying houses located at the mining site. Once he started full time, he began digging tunnels at the site to get higher quality cobalt. He worked in an area where he had to drop down a seven-meter shaft and tunnel from there. He worked with 2 friends in a crew of 3. They each filled up their own bags and then hired motorbike transport to take the cobalt to buyers at Musompo. He typically received about $4 per day and had to give the motorbike transport $1.50. He gave his earnings to his mother. On July 7, 2017, he and his two friends were working together when the pit wall collapsed on him, burying him up to his chest. His two friends were not trapped. He woke up in a hospital and his right leg had been smashed. He was 13 years old at the time of his mining accident. Most of the flesh on his right leg below the knee was ripped off and now his leg is severely disfigured, and he has difficulty walking. He misses playing soccer, which was a joy in his hard life. He has been unable to work since the injury.



John Doe 8

35. John Doe 9 brings his claim for severe injuries to his leg in a mining accident he suffered on July 25, 2017. He was born on April 4, 2002. He went to school until the 6th grade and had to drop out when both of his parents died. He

could not afford the school fees. In 2015, he started working full time at the Tilwezembe mining site, which is owned and controlled by Glencore, which sells cobalt to Umicore. Umicore then processes the cobalt mined by Glencore with the forced labor of Plaintiffs and thousands of other child miners in the DRC, and then supplies the refined cobalt to Apple, Alphabet, Samsung SDI, Microsoft and LG Chem (which supplies Dell and Tesla) for use in cobalt-containing batteries. When he started, he had a "sponsor," Ilunga, who had control over a specific pit at the mine. He recruited boys to work the pit and they were all required to sell their cobalt to Ismail. That pit wall collapsed, so John Doe 9 started working on an independent basis, but to work at Tilwezembe, he was required by Ismail to sell to three other Lebanese brokers who worked with Ismail. No matter how much he produced, Ismail pad him about $2 per day. On July 25, 2017, he was working in a pit and a wall collapsed and smashed his right leg. His younger brother, who also worked at the mine, took him to the hospital where the doctor placed an iron bar in his leg to support the smashed bone. No one, including Ismail, provided him with any financial assistance. He and his brother had to sell their home left to them by their deceased parents to pay the medical bills. The iron bar in John Doe 9's leg needs to be removed but he does not have the funds to have this done. John Doe 9 has no legal guardian because both of his parents are dead, and his only other family member is his younger brother with whom he lives. His brother is 3 years younger than him and works as a hauler at the same mine where John Doe 9 was injured.

41



John Doe 9

36. Jenna Doe 10 brings this claim on behalf of her minor son, John Doe 10, who was born on September 18, 2002. John Doe 10 completed the ninth grade of school. When he was 14 years old, he started going to work in the mines after school was over at 1:30 pm each day. He worked at the Kamilombe No. 1 mine, which is

presently operated by the Australian mining company Taruga Minerals. The concession is owned by Kamoto Copper Company (KCC), which is owned and controlled by Glencore, which sells cobalt to Umicore. Umicore then processes the cobalt mined by Glencore with the forced labor of Plaintiffs and thousands of other child miners in the DRC, and then supplies the refined cobalt to Apple, Alphabet, Samsung SDI, Microsoft and LG Chem (which supplies Dell and Tesla) for use in cobalt-containing batteries.  John Doe 10 worked in a group of 30 guys on 3 teams that were organized by a boss at the mine, "Jean-Pi." John Doe 10 was on the digging team with 12 other boys and they dug a tunnel 35 meters down; there was also a transport team and a washing team. He earned between $3-5 a day for his work. On December 24, 2017 he was working at the mine inside the tunnel. There were six other boys in the tunnel with him and they were told by another member of the team to pack up the cobalt rocks as they had and get out of the tunnel quickly because there were cracks in the walls. Suddenly there was an explosion of noise as the tunnel collapsed. John Doe 10 woke up in a hospital. His hip and left leg were smashed by the rocks that collapsed on him. He was 15 years old when he was crushed in the mine. His left leg is permanently damaged, and he will never be able to walk on it properly again. He continues to be in paid from the injury and does not have the money to get proper medical care.  He had to quit school once he was injured.

37. Jenna Doe 11 brings this claim on behalf of her minor son, John Doe 11, who was born on September 7, 2003. Upon completing the seventh grade, in July

2017, John Doe 11 started working in a mine during his summer break. He was working completed the ninth grade of school. When he was 14 years old, he started going to work at the Lac Malo B5 mine, which is operated by Kamoto Copper Company (KCC), which is owned and controlled by Glencore, which sells cobalt to Umicore. Umicore then processes the cobalt mined by Glencore with the forced labor of Plaintiffs and thousands of other child miners in the DRC, and then supplies the refined cobalt to Apple, Alphabet, Samsung SDI, Microsoft and LG Chem (which supplies Dell and Tesla) for use in cobalt-containing batteries. His father worked in the Kamilombe mine and John Doe 11 thought he could earn some extra money for school fees and notebooks "because life at home was not easy." John Doe 11 worked as a digger in a pit at the mine. The cobalt rocks he gathered in the pit were bought by "John" at the mine site. John Doe 11 earned about $2 per day for his work. After just 2 weeks of working, he was severely injured on July 17, 2017, when the pit wall collapsed on him. He was buried by rocks and woke up in a hospital. Both of his hips and his legs were crushed. He spent three months in the hospital where they put casts on his legs and then fitted him for metal leg braces. He can no longer use either of his legs and must walk with crutches. He is in serious pain every day. He was 14 years old when he was crushed in the mine. He hopes to continue in school and study computers and business.



John Doe 11

38. Jane Doe 3 is the mother of James Doe 3, her child who was killed in a mining accident on April 26, 2018, when he was 14 years old. She brings the claim to recover for the death of her son. James Doe 3 was born on July 2, 2004 and finished

the 6th grade of school. He had to quit because his family did not have money for school fees. He worked with his mother for two years growing and selling vegetables. In early 2018, he went to work at the Tilwezembe mining site as a tunnel digger, which is owned and controlled by Glencore, which sells cobalt to Umicore. Umicore then processes the cobalt mined by Glencore with the forced labor of Plaintiffs and thousands of other child miners in the DRC, and then supplies the refined cobalt to Apple, Alphabet, Samsung SDI, Microsoft and LG Chem (which supplies Dell and Tesla) for use in cobalt-containing batteries. He earned about $2 per day and gave his earnings to his mother. The area where he worked at the mine was controlled by Ismail. When Jane Doe heard on April 26, 2018 that her son was buried in a tunnel collapse, her and her husband raced to the mine. When they arrived, someone threw a rock at her and hit her eye. Her husband had to take her to the hospital, but her right eye is now permanently blind. When the parents were able to check with the mine they learned their son's body was trapped in the tunnel collapse and they were unable to recover his body. Numerous other children were buried alive in this same tunnel collapse.

39. John Doe 12  brings this claim as the heir and legal representative of his younger brother James Doe 12 , who was crushed and died when a tunnel collapsed on him while he was working at the Tilwezembe mining site, which is owned and controlled by Glencore, which sells cobalt to Umicore. Umicore then processes the cobalt mined by Glencore with the forced labor of Plaintiffs and thousands of other

child miners in the DRC, and then supplies the refined cobalt to Apple, Alphabet,

Samsung SDI, Microsoft and LG Chem (which supplies Dell and Tesla) for use in

cobalt-containing batteries. James Doe 12 was born on April 4, 2004 and died in May

2018 when he was 14 years old. James Doe 12 had to leave school after grade 3

because he had no school fees. In May 2017 he went to work at the mine, at first

picking up loose rocks and then he joined a crew of 5 workers in the tunnels,

including his brother John Doe 12. Ismail was in control of the area where they

worked at the mine. On the day of the accident in May 2018, the crew went down a

shaft of about 15 meters and then went into the tunnel. They entered a chamber and

it collapsed on all of them. James Doe 12 and all the others died; only John Doe 12

survived. He woke up in a hospital where he was taken by men working for Ismail,

who paid the bill. John Doe 12 himself is severely injured and can no longer work.

His left leg and foot were crushed in the collapse. John Doe 12 went back to the mine

but was unable to cover James Doe 12's body. John Doe 12 has five children he can

no longer support due to his own inability to work.

40. John Doe 13 brings this claim on his own behalf. He was born on February

16, 2001, and he went to school though grade 9. He dropped out then because his

family could not pay his school fees. In early 2015, he went to work in the Metalkol

SA mine, which is owned by the Eurasian Resources Group (ERG), which then sells

refined cobalt to, among others, Defendant Tesla. At first, he was picking up rocks

and selling them to Ahmed and Aza, two men on site who bought cobalt rocks from

the miners. He then started working in the tunnels on a team of 5. Working together they each earned $3-5 a day. On June 16, 2018, as usual, they were working as a team with three boys in the tunnel digging and 2 in back of them gathering the cobalt rocks and bagging them. John Doe 13 was among the three diggers when the tunnel they were in collapsed. The other two boys who were digging died on the spot. The two other boys on his team went to get help for John Doe 13. They dug him out and took him to Methodist hospital in Kolwezi, where he stayed for two months. His left leg and hip were smashed. He was 17 years old when he was maimed at the mine. The doctors inserted an iron bar in his leg to hold the bone together. After two months they sent him home, but he had to go back because the flesh wounds got infected. To this day, the skin has not properly healed and gets infected, and he needs to have the iron bar removed from his leg. This would all cost about $5,000, and he does not have any money. He is in constant pain and can no longer walk on his injured leg.



John Doe 13

**B.   Former Child Miner Plaintiffs' Class Action Allegations**

41. All of the Plaintiffs bring this action on behalf of themselves and all other

similarly situated current and former child workers forced to engage in hazardous

work mining cobalt for the end use of Defendants Apple, Alphabet, Dell, Microsoft

and Tesla. The members of the class have been forced to mine cobalt under

hazardous conditions in the Haut-Katanga or Lualaba Provinces of DRC, which

includes the mining center of Kolwezi.

42.    Plaintiffs bring this action individually, and pursuant to Fed. R. Civ. P.

23(a), 23(b)(2), and 23(b)(3), on behalf of the following class:

> All individuals during the period January 1, 2010 through the present
> who reside or did reside in the Haut-Katanga or Lualaba Provinces of
> DRC who were trafficked and/or forced to labor as children and
> perform hazardous work as defined by ILO Convention No. 182 (Art. 3)
> while under the age of 18 at an "artisanal" cobalt mine in the Lualaba
> Province of DRC that supplied cobalt to any of the Defendants.

43.    The class is so numerous that joinder of all members is impractical.

Based on all objective research done on children working as artisanal cobalt miners in

the Haut-Katanga or Lualaba Provinces of DRC there is uniform agreement that

there are tens of thousands of children who would qualify as class members.

44.    There are questions of law and fact common to the class. Key common

questions include, but are not limited to, the following:

> a)     Whether Plaintiffs and Proposed Class Members were unlawfully
>
> trafficked or were forced as children to work in violation of 18 U.S.C. §§

1589, 1590, 1595, 1596 as artisanal miners in cobalt mines that supplied

cobalt to any of the Defendants named herein?

b)      Whether Defendants benefited from participating in a venture

that relied on the trafficked or forced labor of children in violation of

international, federal, and District of Columbia law?

c)      Whether Defendants assisted or contributed to the trafficking or

forced labor of Plaintiffs and Proposed Class Members by failing to take

adequate action to prevent and stop such practices in violation of

international law, federal law and District of Columbia law?

d)      Whether injunctive relief can be fashioned to prevent further

trafficking of children and the forced use of their labor in cobalt mines

that supply cobalt to the Defendants named herein?

45.     Plaintiffs' claims are typical of the claims of the class. They seek redress

for the same conduct that has affected all class members and press legal claims which

are the same for all class members.

46.     Plaintiffs named herein will fairly and adequately represent the class.

These Plaintiffs do not have conflicts of interest with members of the class and have

retained counsel who are experienced in complex litigation, including class actions and

international litigation, who will vigorously prosecute this action.

47.     A class action is the superior method for adjudication of this

controversy. In the absence of a class action, courts will be unnecessarily burdened

with multiple, duplicative individual actions. Moreover, if a class is not certified, many meritorious claims will go without redress as individual class members will not be able to prosecute complex litigation against Defendants, some of the largest and wealthiest corporations in the world.

### C. Defendants Apple, Alphabet, Dell, Microsoft and Tesla Use DRC Cobalt Mined By Children Performing Hazardous Work.

48. Defendant Apple, Inc. is incorporated in Delaware and has its corporate headquarters in Cupertino, California. Apple does substantial and continuous business in the District of Columbia. Apple manufactures a number of devices that require and use cobalt mined in DRC, including the MacBook line of laptop computers, iPhones, iPads, Apple Watch and other such devices. Apple manufactures much of its products in China, where it has faced recent and ongoing scrutiny for manufacturing at sweatshop facilities that require workers to work long hours for little pay under difficult and stressful conditions.

49. Among others, Apple obtains DRC cobalt from some of the largest and worst mining operators in the DRC, including Kamoto Copper Company (KCC), Katanga Mining, MUMI (Mutanda Mining), CDM (Congo Dongfang Mining) and COMUS (Compagnie Miniere de Musonoi. KCC, MUMI and Katanga Mining are owned and controlled by Glencore, which sells cobalt to Umicore. Umicore processes the cobalt and then supplies refined cobalt to Apple and many other tech companies

for use in cobalt-containing batteries. CDM and COMUS are owned and controlled

by Huayou Cobalt, which also sells battery materials to Apple, Dell, Microsoft and

many other tech companies.

50. Apple knows the well-publicized fact that these two companies (Glencore

and Huayou Cobalt) produce cobalt that includes cobalt mined under hazardous

conditions by young children earning two or three U.S. dollars per day and,

remarkably, in many cases even less than that, for risking their lives. Apple is currently

worth over one ***trillion*** U.S. dollars. Its annual revenue is 229 billion U.S. dollars.

51. As part of the Amnesty Report, the Amnesty researchers asked Apple about

children performing hazardous labor in the company's supply chain. Apple responded

that it was "[c]urrently evaluating dozens of different materials, including cobalt, in

order to identify labor and environmental risks as well as opportunities for Apple to

bring about effective, scalable and sustainable change." Amnesty Report at 59.

Amnesty observed, "Apple did not explain why it has not put in place due diligence

measures for cobalt until now, particularly since human rights risks associated with its

extraction in the DRC are well documented. For example, the US government has

issued warnings relating to child labour linked to the extraction of cobalt in the DRC

since 2009." *Id.* (emphasis added).

52. Defendant Alphabet, Inc. is a Delaware Corporation headquartered in

Mountain View, California, and it does substantial and continuous business in the

District of Columbia. As part of a restructuring, on October 2, 2015, Alphabet

became the parent company of its wholly-owned subsidiary Google. Using the Google

name, Alphabet produces multiple devices including Nexus phones and tablets,

Chromebook, Google Pixel smartphone, Google home smart speaker, and various

Pixelbooks. All of these devices include lithium ion batteries that use cobalt that is

mined in the DRC.

53. Among others, Alphabet obtains DRC cobalt from one of the largest and

worst mining operators in the DRC, KCC. KCC is owned and controlled by

Glencore, which sells cobalt to Umicore. Umicore processes the cobalt and then

supplies refined cobalt to Alphabet and many other tech companies for use in cobalt-

containing batteries.

54. Alphabet knows the well-publicized fact that KCC produces cobalt that

includes cobalt mined under hazardous conditions by young children earning two or

three U.S. dollars per day and, remarkably, in many cases even less than that, for

risking their lives. Alphabet's current worth is estimated at 279.3 billion U.S. dollars.

Its founders Larry Page and Sergey Brin are worth 48.8 and 47.5 billion U.S. dollars

respectively.

.     55. Defendant Dell Technologies Inc. is headquartered in Round Rock, Texas.

Dell does substantial and continuous business in the District of Columbia. Dell

manufactures a number of devices that require and use cobalt mined in DRC,

including its laptops and tablets.

56. Among others, Dell obtains DRC cobalt from one of the largest and worst mining operators in the DRC, KCC. KCC is owned and controlled by Glencore, which sells cobalt to Umicore. Umicore processes the cobalt and then supplies refined cobalt to Dell and many other tech companies for use in cobalt-containing batteries. Dell also obtains cobalt from Huayou Cobalt mined by CDM.

57. Dell knows the well-publicized fact that KCC and CDM produce cobalt that includes cobalt mined under hazardous conditions by young children earning two or three U.S. dollars per day and, remarkably, in many cases even less than that, for risking their lives. Dell's annual revenue is 78.7 billion U.S. dollars. Dell's Chairman and CEO, Michael Dell, is reported to have a net worth of 35 billion U.S. dollars.

58. Defendant Microsoft, Inc. is headquartered in Redmond, Washington. Microsoft does substantial and continuous business in the District of Columbia. Microsoft manufactures a number of devices that require and use cobalt mined in DRC, including its laptops and tablets. Among others, Microsoft obtains DRC cobalt from one of the largest and worst mining operators in the DRC, KCC. KCC is owned and controlled by Glencore, which sells cobalt to Umicore. Umicore processes the cobalt and then supplies refined cobalt to Microsoft and many other tech companies for use in cobalt-containing batteries. Defendant Microsoft is also supplied with battery materials by CDM and COMUS, which are owned and controlled by Huayou Cobalt.

59. Microsoft knows the well-publicized fact that KCC and CDM produce cobalt that includes cobalt mined under hazardous conditions by young children earning two or three U.S. dollars per day and, remarkably, in some cases even less than that, for risking their lives. Indeed, Microsoft's "FY19-Devices-Sustainability-at-Microsoft" disclosure[13] is particularly cynical and misleading. As to Umicore, Microsoft "discloses" that Umicore is "conformant" with Microsoft's sourcing requirements. This would come as a huge surprise to many Plaintiffs and others similarly situated who have been maimed or who had children killed at Umicore's cobalt source, Glencore's KCC mines. Further, Microsoft admits it still uses Huayou Cobalt after literally getting caught by Amnesty using this notoriously nonconformant supplier and now states that there is "outreach required" at Huayou Cobalt. The children maimed or killed by Huayou would surely say that more than outreach is required, and that Microsoft is criminally complicit in continuing to profit from using Huayou Cobalt knowing that Huayou is willfully ignoring the law and allowing young children to die or become crippled mining cobalt. Microsoft's current net worth is 69.96 billion U.S. dollars. Microsoft's co-founder, Bill Gates, has an estimated net worth of 90 billion U.S. dollars.

60. In responding to Amnesty Researchers, Microsoft conceded that it did not follow the OECD's guidance on tracing its cobalt supply chain. Microsoft responded

---

[13] http://aka.ms/devicessustainability

to Amnesty that "we have not traced the cobalt used in Microsoft products through our supply chain to the smelter level due to the complexity and resources required." Amnesty Report at 60. Amnesty commented that it "does not consider this to be a convincing argument for not doing the required due diligence for DRC cobalt, particularly given the significant size and resources of the company, as well as its potential leverage over its suppliers." *Id.*

61. Defendant Tesla, Inc. has its corporate headquarters in Palo Alto, California. Tesla does substantial and continuous business in the District of Columbia. Tesla manufactures electric cars and trucks that include large batteries that require and use cobalt mined in DRC. Among others, Tesla obtains DRC cobalt from one of the largest and worst mining operators in the DRC, KCC. KCC is owned and controlled by Glencore, which sells cobalt to Umicore. Umicore processes the cobalt and then supplies refined cobalt to Apple and many other tech companies for use in cobalt-containing batteries. Umicore processes the cobalt and then supplies refined cobalt to LG Chem that supplies Tesla with cobalt for use in its cobalt-containing batteries. Tesla also obtains cobalt from the Eurasian Resources Group (ERG) which operates cobalt mines in the DRC.

62. Tesla knows the well-publicized fact that KCC and ERG produce cobalt that includes cobalt mined under hazardous conditions by young children earning two or three U.S. dollars per day and, remarkably, in many cases even less than that, for

risking their lives. Tesla is currently worth is 45 billion U.S. dollars. Tesla's CEO, Elon

Musk, has a net worth of 22 billion U.S. dollars.


## IV.    CLAIMS FOR RELIEF

## COUNT I

## FORCED LABOR BY ALL PLAINTIFFS AGAINST ALL DEFENDANTS
## TVPRA, 18 U.S.C. §§ 1589 & 1595

63.    Plaintiffs incorporate by reference paragraphs 1 to 62 of this Complaint

as if fully set forth herein.

64.    Defendants Apple, Alphabet, Dell, Microsoft and Tesla all knowingly

aided and abetted and benefitted enormously from a system that forces impoverished

children, including the Plaintiffs and others similarly situated, to perform extremely

hazardous work without safety equipment of any kind for less than subsistence wages

in order to barely eke out a minimal human existence. But, as the facts relating to the

fates of the Plaintiffs establish, many of them don't survive. The conditions in the

cobalt mines are so dangerous and primitive that many children, and adult workers as

well, regularly die in tunnel collapses, pit wall collapses, or from falling into

unprotected shafts. Others, like many of the Plaintiffs, suffer serious injury and are

maimed for life, unable to work again and unable to support themselves. These

injuries place immense pressure on families requiring additional children to work in

cobalt mining to replace the lost earnings of the injured family member(s). Each of

the Defendants has the power and ability to free these child miners from their cycle of being forced to work in extremely dangerous conditions to supply cobalt to one of the richest and most profitable industries in the history of the world. In addition, being exposed to cobalt is itself hazardous. The ILO has specifically found that cobalt mining in DRC is one of the worst forms of child labor due to the health risks. Cobalt is a known health hazard and there is a respiratory disease caused by exposure to it, cobalt lung, a form of pneumonia which causes coughing and can lead to permanent incapacity and death.

65. Defendants Apple, Alphabet, Dell, Microsoft and Tesla all gain significant financial advantage from their participation in the "artisanal" mining of cobalt. These companies get cobalt, an essential element for the batteries powering their expensive gadgets, for a price that reflects that the cobalt was largely mined by children earning 2 or 3 U.S. dollars a day and, remarkably, in many cases even less than that, to unearth enough cobalt to supply tens of thousands of dollars' worth of expensive gadgets.

66.    Labor exacted from children through financial deprivation, the use of labor brokers or coordinators to find and direct child workers to specific mine sites, as was the case with many of the Plaintiffs, the constant threat of malnourishment or starvation, the imposition of fraudulent weighing and payment systems, the withholding of payments for weeks at a time, and, most significant, the requirement that the child workers perform "hazardous work" that qualifies as one of the "worst forms of child labor" within ILO Convention No. 182, is within the range of "forced

labor" under § 1589 of the TVPRA. Physical, mental, and financial harm are "serious harms" under § 1589(c)(2), which trigger liability under §§ 1589 and 1595. Plaintiffs suffered serious, easily discernible physical injuries, lacerations, bruises, infections, malnutrition, illness and death. Defendants' representatives knew or should have known about this systematic forced and abusive labor endured by Plaintiffs and tens of thousands of other children.

67.     Under §§ 1589 and 1595 of the TVPRA, Defendants Apple, Alphabet, Dell, Microsoft and Tesla are liable if they (1) participated in a venture; (2) knowingly "receiv[ed] anything of value" from the venture; and (3) knew or should have known that the venture had engaged in forced labor as defined by § 1589. As previously alleged, Defendants knowingly benefitted from forced child labor in the DRC cobalt mining industry and the three elements required for them to be liable under the TVPRA are easily satisfied in this case.

## The Cobalt Supply Chain Is a "Venture"

68. The cobalt supply chain, including Defendants Apple, Alphabet, Dell, Microsoft and Tesla, is a "venture" that exists for the purpose of maintaining a steady supply of cheap cobalt that is mined by peasants and children. The supply chain is, by design, hidden and secretive to allow all participants to profit from cheap cobalt mined under extremely hazardous conditions by desperate children forced to perform extremely hazardous labor without safety equipment of any kind.

69. The main drivers of the modern, tech-driven cobalt supply chain are Glencore/Umicore, which supply to all of the Defendants, and Zhejiang Huayou Cobalt Company Ltd (Huayou Cobalt), which certainly supplies to Defendants Apple, Dell and Microsoft, and probably other Defendants. These are all notorious bad actors on both human rights and environmental issues. Knowing that the tech boom was going to cause a major surge in demand for cobalt, these companies stepped in to dominate the market and develop reliable sources for DRC cobalt. Defendants Apple, Alphabet, Dell, Microsoft and Tesla certainly have knowledge that the cobalt they purchase from these companies is produced by global outlaws that think nothing of selling DRC cobalt mined by seriously exploited children. Any claims made of a traceable cobalt supply chain from the DRC by use of "model sites", blockchain, or other technology, thereby allowing for a cobalt supply that is free of child labor or other labor abuses are preposterous, as anyone who has spent even a small amount of time on the ground in the southeastern provinces of the DRC will know that cobalt from numerous sources – industrial and artisanal – are inevitably mixed at various stages in the supply chain, including transport by truck from mining site(s) and buying houses to refiners in the DRC, or within refiners in the DRC prior to export for additional processing by companies like Umicore and Huayou cobalt. Again, this is intentional on the part of the supply chain venture to obscure the supply chain and allow companies like Umicore and Huayou to maintain the false illusion that some of their cobalt in not mined by children.

70. Glencore is well-known in human rights and environmental circles as a scorched earth mining company that operates outside of internationally-recognized human rights and environmental standards and will do whatever it can get away with to maximize profits. Glencore is currently under investigation in both the United States and Great Britain[14] for, among other things, bribing officials in the DRC to acquire companies that the DRC had a stake in and to obtain mining concessions for cobalt. Most of Glencore's corrupt deals in the DRC involved Dan Gertler, an Israeli mining executive who had strong connections in the DRC, particularly with the notoriously corrupt former DRC President, Joseph Kabila. This and other systematic corruption in the DRC cobalt sector is well-documented in Project Enough's report, *Powering Down Corruption Tackling Transparency and Human Rights Risks from Congo's Cobalt Mines to Global Supply Chains* by Annie Callaway (October 2018).[15] Glencore's modern cobalt supply chain providing Defendants Apple, Alphabet, Dell, Microsoft and Tesla with DRC cobalt was born in crime.

71. Glencore's partner in supplying Defendants Apple, Alphabet, Dell, Microsoft and Tesla with DRC cobalt is Umicore, a Belgian company that was first incorporated in 1906 as *Union Minière du Haut Katanga* (UMHK) specifically for the

---

[14] The U.K. Office of Fraud has recently launched a formal investigation of Glencore's corruption and bribery. *See* https://seekingalpha.com/news/3523988-u-k-fraud-office-opens-probe-of-suspected-bribery-glencore.

[15] https://enoughproject.org/wp-content/uploads/PoweringDownCorruption_Enough_Oct2018-web.pdf

purpose of profiting from the exploitation of natural resources in King Leopold's private colony, the Congo Free State. UMHK was a major participant in the horrific pillaging and exploitation of the Congo by King Leopold and the companies associated with him. As previously noted, the absolute horrors of this period are well-documented in Adam Hochschild's book, ***King Leopold's Ghost***, as well as in Joseph Conrad's ***Heart of Darkness***. Umicore and Glencore formally agreed to form a venture in which Glencore's DRC cobalt from, among other places, Glencore's mines operated by KCC, MUMI and Katanga Mining, where most of the Plaintiffs were severely injured or killed, and Umicore would whitewash this blood-stained cobalt and sell it to among others, Defendants Apple, Alphabet and Microsoft, as well as LG Chem (which supplies Defendants Dell and Tesla). All of these companies were formally locked in a "venture" that was created to mine cobalt under horrific conditions using young children to perform hazardous labor. The venture was also established to preserve the existing obscure supply chains of cobalt in the DRC to create plausible deniability for all involved. In the refining process, Umicore intentionally mixes the cobalt mined by children working under hazardous conditions with other cobalt and takes other steps to impair the traceability of the DRC cobalt to give Defendants Apple, Alphabet, Dell, Microsoft and Tesla plausible deniability as to the source of the cobalt they purchase from Umicore.

72. Similarly, Huayou Cobalt and its mining arms in DRC, CDM and COMUS, is a notorious operator and plays a major role in managing the purchase of cobalt

from child miners, including Plaintiffs, who are forced to work under hazardous,

severely dangerous, conditions. As the <u>Mail on Sunday</u> observed,

> Chinese middle-men working for the Congo Dongfang Mining Company have
> the stranglehold in DRC, buying the raw cobalt brought to them in sacks carried
> on bicycles and dilapidated old cars daily from the Katanga mines. They sit in
> shacks on a dusty road near the Zambian border, offering measly sums scrawled
> on blackboards outside – £40 for a ton of cobalt-rich rocks – that will be sent by
> cargo ship to minerals giant Zhejiang Huayou Cobalt in China and sold on to a
> complex supply chain feeding giant multinationals.
>
> Challenged by the <u>Washington Post</u> about the appalling conditions in the mines,
> Huayou Cobalt said "it would be irresponsible" to stop using child labour,
> claiming: "It could aggravate poverty in the cobalt mining regions and worsen
> the livelihood of local miners."[16]

73. Indeed, in a March 3, 2017 <u>Washington Post</u> article, Todd Franken reported

that Defendant Apple had temporarily suspended purchasing DRC cobalt from

Huayou Cobalt precisely because of continued documentation that young children

were performing hazardous work mining cobalt for the company.[17] This was in

response to the devastating September 30, 2016 <u>Washington Post</u> article, *Cobalt*

*Pipeline, Tracing the path from deadly hand-dug mines in Congo to consumers' phones and laptops*,[18]

also by Todd Franken, that specially found that Huayou Cobalt was indifferent to

whether children were performing hazardous work mining cobalt for Huayou Cobalt.

---

[16] <u>Washington Post</u> (September 30, 2016),
https://www.washingtonpost.com/business/economy/companies-respond-to-questions-about-
their-cobalt-supply-chains/2016/09/30/910f94de-7b51-11e6-bd86-b7bbd53d2b5d_story.html
[17]https://www.washingtonpost.com/news/the-switch/wp/2017/03/03/apple-cracks-down-further-
on-cobalt-supplier-in-congo-as-child-labor-persists/
[18]https://www.washingtonpost.com/graphics/business/batteries/congo-cobalt-mining-for-lithium-
ion-battery/?tid=lk_inline_manual_3

Defendant Apple's announcement that it was "suspending" purchasing cobalt from Huayou Cobalt was just another Apple public relations maneuver; in its Apple Supplier Responsibility 2018 Smelter and Refiner List, Apple continues to list "Zhejiang Huayou Cobalt Co., Ltd." as a supplier of DRC cobalt and claims to have conducted a "third party audit." As previously alleged, Microsoft also purchases battery materials from Huayou Cobalt and provides inaccurate and misleading information about whether Huayou Cobalt continues to use child miners exposed to the worst forms of child labor as defined by ILO Convention No. 182.

74. Apple, Microsoft, Dell, and Huayou Cobalt may manipulate the various middlemen of their supply chain to deceive and distract the public, but the parties remain participants in a "venture" to ensure that, no matter what the actual facts are about the ongoing use of children performing hazardous work to harvest DRC cobalt for Huayou Cobalt, Apple, Dell, and Microsoft will have a steady supply of cobalt from Huayou Cobalt. As Amnesty concluded, "Huayou Cobalt is failing to respect international human rights as required by the UN Guiding Principles and it is not implementing the five-step framework recommended in the OECD Guidance, despite the fact that the OECD Guidance has been recognised by the Chinese Chamber of Commerce of Metals Minerals & Chemicals Importers & Exporters as the "recognised international framework" to conduct mineral supply chain due diligence. For all the reasons stated above, there is a high risk that Huayou Cobalt is buying (and subsequently selling) cobalt from artisanal mines in which children are engaged in

hazardous labour, one of the worst forms of child labour, and where adult workers

work in unsafe and hazardous conditions." Amnesty Report at 59.

75. The other participants in the "venture" with Huayou Cobalt almost

certainly include some of the other Defendants. However, these companies are flat

out lying about their participation in this venture because of Huayou Cobalt's horrible

reputation and record. As Amnesty concluded, "[m]any companies denied sourcing

cobalt from the DRC and/or Huayou Cobalt – though they are listed as customers in

documents of other companies who are listed as buying from Huayou Cobalt – but

did not explain whom they sourced cobalt from. Considering the predominance of

cobalt from the DRC in the global market, it is unlikely that all these large companies

are not sourcing any cobalt from the DRC. Downstream companies should already be

publicly disclosing who their smelters are, as well as their due diligence practices.

However, none provided enough detail for Amnesty International to be able to verify

their cobalt supply chain or whether they were undertaking all five steps of the

OECD Guidance in relation to cobalt." Amnesty Report at 65. Amnesty also

observed, "[a]ny company which sources processed ore, and its customers along the

supply chain, referred to as "downstream" companies, should be able to trace its

suppliers up to the smelters (such as CDM and Huayou Cobalt), and should be fully

aware of the due diligence practices of the smelter company. In their letters to

Amnesty International, most of these downstream companies referred to general

codes of conduct and internal policies, which require suppliers to respect human

rights and not employ children. Many of these companies stated that they have a zero tolerance policy when it comes to child labour in their supply chains. However, they did not provide details of specific investigations and checks that they have undertaken to identify and address child labour in their cobalt supply chains. None of the companies said that they had been in touch with Huayou Cobalt, prior to receiving our letter." *Id.*

76. Defendant Microsoft is an example of the disingenuous positions taken by all of the Defendants who are participants in deliberately obscure cobalt supply chain ventures. As Amnesty reported, "Microsoft said it was already supporting an organization that was tackling human rights abuses, including child labour, in artisanal mines in southern DRC. As for tracing the mineral through its supply chain to the smelter, Microsoft stated that in practice, 'tracing metals such as cobalt up through multiple layers of our supply chain is extremely complex.' Microsoft wrote that creating such a tracing mechanism would require 'a large degree of vertical and cross-industry collaboration.' Yet, no further details were provided on actual attempts made by the company to trace this chain in practice. Compared to the supply chain due diligence that many companies have started to develop in relation to 3T and gold, Amnesty's research has shown that cobalt is no more difficult. In fact, research carried out in this report suggests that the trade in cobalt is more concentrated since so much of it is sourced from the DRC." Amnesty Report at 64-65.

77. The modern cobalt supply chains were developed by the participating companies, including Defendants Apple, Alphabet, Dell, Microsoft and Tesla, to allow them to harness for their own supply chains the existing, brutal, illegal cobalt supply chains in DRC. The companies are intentionally failing to exercise the required due diligence because it is in their interests to hide behind the "ventures" they have formed and obtain a steady supply of cheap cobalt.

### Defendants knowingly received something of value from the "venture."

78. Defendants Apple, Alphabet, Dell, Microsoft and Tesla are all buying DRC cobalt that was mined in significant part by young children performing hazardous work for 2-3 U.S. dollars per day or less. As per public reports, *see* paragraphs 6-10, *supra*, Defendants all have knowledge of the forced labor, dangerous conditions and extremely low pay provided to child cobalt miners.

79. Further, all of these Defendants have announced bogus programs to ensure children are not working in their cobalt supply chains, but none of them actually perform the required due diligence to verify whether children are mining cobalt in their supply chains. Defendants Apple, Alphabet, Dell, Microsoft and Tesla not only are knowingly benefiting from the extremely cheap labor of child cobalt miners, they are knowingly obscuring the true facts of their cobalt supply chains to extend as long as possible the time they continue to benefit from the cheap exploited labor of

Plaintiffs and others similarly situated before consumer pressure, legal action, or government intervention forces them to protect the children, provide safe conditions and fair wages for adult workers, and ensure environmentally sustainable mining practices.

### Defendants knew or should have known that their respective ventures had engaged in forced labor as defined by § 1589.

80. As previously alleged, Defendants Apple, Alphabet, Dell, Microsoft and Tesla all had specific knowledge from public reports that the DRC cobalt that they were buying within their ventures with Glencore/Umicore and/or Huayou Cobalt, as well as other sources, was mined in significant part by young children performing hazardous work for 2-3 U.S. dollars per day and, remarkably, in many cases even less than that. *See, e.g.* paragraphs 6-11, *supra*.

81. Further, as previously alleged in paragraph 14, *supra*, Plaintiffs' research team across 2017-19 easily observed, interviewed and photographed children performing hazardous work mining cobalt under horrific conditions. Further, they interviewed and photographed a parade of children maimed by cobalt mining accidents at mines owned, operated, and/or controlled by the suppliers to both ventures, Glencore/Umicore and Huayou Cobalt. Unless Defendants have never had a representative visit the cobalt mining areas of the DRC, which is extremely unlikely, then Defendants themselves have observed the same horrible conditions under which children mine cobalt for them under extremely hazardous conditions.

82. Defendants Apple, Alphabet, Dell, and Microsoft, among other companies, have all made significant financial contributions to PACT, a Washington-D.C.-based non-profit organization working in the mining areas of DRC, that purports to be working on ending forced child labor in cobalt mining.  Upon information and belief, representatives of these companies have visited the mining areas of DRC to observe PACT's programs, as well as other mining sites, and acquired knowledge about the horrible conditions for child miners in their supply chains. Further, given the significant amounts of money each of them provided to PACT, the companies must be getting detailed reports of conditions facing child miners in the DRC cobalt mines. These companies cannot be paying to try to stop a system of forced child labor that they do not have specific knowledge of. PACT's model program at a single cobalt mine, Mutoshi, has had no impact on the use of forced child labor in Defendants' supply chain ventures. On the contrary, Plaintiff's research team was given a tour of the Mutoshi site by senior staff and was informed that cobalt mined by child labor is regularly mixed into the supply of cobalt mined on-site, cobalt mined by child labor is regularly mixed into this same supply through purchases at buying houses en route to smelting facilities in Lubumbashi, and that there is absolutely no tagging of cobalt bags mined at this site, contrary to claims made by PACT. In truth, the program serves as a cynical poster child to give the companies supporting it an opportunity to hide the reality of the use of forced child labor to mine cobalt for them.

83. As for Defendant Tesla, it is a huge consumer of DRC cobalt and must, by now, have sent representatives to follow up on the widespread public reports of child labor in the DRC supply chain. Indeed, as reported in the <u>Washington Post</u>, "Tesla, more than any other automaker, has staked its reputation on 'ethically sourcing" every piece of its celebrated vehicles . . . [regarding child labor in the cobalt supply chain] Kurt Kelty, Tesla's director of battery technology, said in March at a battery conference in Fort Lauderdale, Fla. 'And we need to take it even more seriously. So, we are going to send one of our guys there.'" [19] If Tesla has not yet sent a representative to verify the specific factual reports of horrific forced child labor in its cobalt supply chain, then it certainly "should have known" these facts.

84. As Amnesty reported, "[m]any of these companies stated that they have a zero tolerance policy when it comes to child labour in their supply chains. Some of these companies refer to contractual requirements that they impose on direct suppliers to ensure that they adhere to these types of prohibitions. Others refer to specific provisions that the company has developed in relation to the child's rehabilitation into education and/or financial support should this be found in factories. However, they did not provide any information on whether these policies are being implemented in relation to the DRC cobalt supply chain." Amnesty Report at 64-65. ***Defendants Apple, Alphabet, Dell, Microsoft and Tesla all have***

---

[19]https://www.washingtonpost.com/graphics/business/batteries/congo-cobalt-mining-for-lithium-ion-battery/?tid=lk_inline_manual_3

*specific policies claiming to prohibit child labor in their supply chains. Their*

*failure to actually implement these policies to stop forced child labor in cobalt*

*mining is an intentional act to avoid ending their windfall of getting cheap*

*cobalt mined by forced child labor that they are acutely aware of.*

85. As Amnesty reported, "[t]he Organisation for Economic Co-operation and
Development (OECD) has provided a practical guide for how such due diligence [for
cobalt supply chain] should be carried out through its Due Diligence Guidance for
Responsible Supply Chains of Minerals from Conflict-Affected and High-Risk Areas
(OECD Guidance). In 2010, 34 OECD member states approved the OECD
Guidance. The International Conference on the Great Lakes Region (ICGLR), a
regional body, including the DRC, then endorsed it. Nine non-OECD members have
also adhered to the OECD Guidance. More recently, China recognized the guidance
as an international standard for conducting responsible mineral supply chain due
diligence. The widespread adoption of the OECD Guidance points to a growing
global recognition that companies should carry out responsible supply chain practices
when sourcing minerals from conflict affected or high-risk areas." Amnesty Report at
28 (footnotes omitted). The failure of any of the Defendants to implement known
measures to address forced child labor in their cobalt supply chains is a willful failure
by Defendants to avoid ending their windfall of getting cheap cobalt mined by forced
child labor that they are acutely aware of.

86. If any of Defendants Apple, Alphabet, Dell, Microsoft and Tesla do not have specific knowledge of forced child labor in their cobalt supply chain ventures, then this is an extreme form of willful ignorance and they certainly "should have known" that their supply chain ventures are dependent upon the cheap labor of forced child labor.

87. Under § 1590 of the TVPRA, entities that "recruit, harbor, transport, provide, or obtain" a person's labor through the methods proscribed in § 1589 can also be held legally liable for trafficking child labor. Here, as delineated above, Defendants had reckless disregard that the cobalt mines they sourced from "harbor[ed]" children at their mines and engaged these children in forced labor. Many of the Plaintiffs additionally have alleged that they were directly trafficked to work in specific mines by persons acting on behalf of the mines that supplied Defendants.

## COUNT II

### UNJUST ENRICHMENT BY ALL PLAINTIFFS
### AGAINST ALL DEFENDANTS

88.    Plaintiffs reallege and incorporate by reference all paragraphs 1 to 87 previously alleged herein.

89.    Wholly apart from Defendants' liability under the TVPRA as previously established, to the detriment of Plaintiffs and the Class Members, Defendants Apple, Alphabet, Dell, Microsoft and Tesla have been and continue to be unjustly enriched as

73

a result of the wrongful conduct alleged herein. Defendants have unjustly benefited by receiving DRC cobalt at prices reflecting that a significant portion of Defendants' cobalt supply chain is mined by children performing extremely hazardous work for 2 to 3 U.S. dollars per day and, remarkably, in many cases even less than that. Defendants are knowingly benefiting and being unjustly enriched from the unlawful use of forced child labor in their cobalt supply chains at the expense of Plaintiffs and the Class Members who are being paid below starvation wages to risk their lives and health to mine cobalt for Defendants. Further, as previously alleged, the cobalt supply chain "ventures" Defendants participate in use deception and misrepresentations to hide the true facts of Defendants abuse of Plaintiffs and the Class Members to continue to obtain unfairly low-priced cobalt. Between the parties, it would be unjust and inequitable for Defendants Apple, Alphabet, Dell, Microsoft and Tesla, already incredibly rich companies run by extremely rich executives, to get a windfall and retain the benefits from their abuse of Plaintiffs and the Class Members.

90.    Accordingly, Plaintiffs seek full restitution of enrichment, benefits, and ill-gotten gains Defendants Apple, Alphabet, Dell, Microsoft and Tesla acquired as a result of the wrongful conduct alleged herein.

# COUNT III

## NEGLIGENT SUPERVISION BY ALL PLAINTIFFS
## AGAINST ALL DEFENDANTS

91.     Plaintiffs incorporate by reference paragraphs 1 to 90 as if set forth fully herein.

92.  When engaging in the wrongful conduct alleged herein, the owners and controllers of the cobalt supply chain ventures, Glencore/Umicore and Huayou Cobalt that supplied Defendants Apple, Alphabet, Dell, Microsoft and Tesla with cobalt as specifically alleged herein acted as Defendants' agents. Defendants exercised control over their actions and provided direction as to the quality and quantity of cobalt supplied to them.

93.     Defendants Apple, Alphabet, Dell, Microsoft and Tesla knew or reasonably should have known that the cobalt supply chain ventures operated by Glencore/Umicore and Huayou Cobalt were using forced child labor to mine cobalt and that Plaintiffs and the Class Members would suffer injury if forced to work in such a system.

94.     Defendants had the authority to supervise, prohibit, control, and/or regulate their cobalt supply chain. Indeed, Defendants claim to the public that their policies and practices were allegedly designed to stop the use of forced child labor and prevent the acts and omissions described herein from occurring. Further, as previously alleged, Defendants had a duty under generally-accepted international

standards to prevent the use of forced child labor in their cobalt supply chains.

Defendants also had the ability to cease purchasing DRC cobalt until such time as the

violations alleged herein were stopped and/or prevented.

95.    Defendants knew or reasonably should have known that unless they

intervened to protect Plaintiffs and properly supervise, prohibit, control and/or

regulate the conduct described herein, Plaintiffs would suffer the injuries alleged

herein.

96.    Defendants failed to exercise due care by failing to supervise, prohibit,

control or regulate its employees and/or agents, and also failed to make appropriate

investigations into the possible negative impact on Plaintiffs and others similarly

situated who were forced to mine cobalt for Defendants' suppliers. As a direct and

proximate result of Defendants' negligent supervision, Plaintiffs have suffered and

continue to suffer injuries entitling them to damages in an amount to be ascertained at

trial.

## COUNT IV

### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
### ALL PLAINTIFFS AGAINST ALL DEFENDANTS

97.    Plaintiffs incorporate by reference paragraphs 1 to 96 of this Complaint

as if set forth fully herein.

98.    By intentionally and continuously participating in cobalt supply chain

ventures that rely upon using Plaintiffs and members of the class as forced child labor,

Defendants Apple, Alphabet, Dell, Microsoft and Tesla engaged in outrageous conduct which went beyond all bounds of decency.

99.     By supporting and enabling a system that relies on forced child labor for higher profits, and that allows children to become maimed or to die in cobalt mining accidents, Defendants committed acts which were intended to cause Plaintiffs to suffer severe emotional distress. In the alternative, Defendants engaged in the conduct with reckless disregard of the probability of causing Plaintiffs to suffer severe emotional distress. Plaintiffs were present at the time this outrageous conduct occurred and Defendants knew that Plaintiffs or others similarly situated would be present.

100.     Defendants' conduct was the cause of Plaintiffs' severe emotional distress and physical damage.

101.     As a direct and proximate result of Defendants' conduct, Plaintiffs have suffered damages in an amount to be ascertained at trial.

## V.     DEMAND FOR JURY TRIAL

102.     Plaintiffs demand a trial by jury on all issues so triable.

## VII     PRAYER FOR RELIEF

103.     WHEREFORE, Plaintiffs pray this Court will enter an order:

a. Entering judgment in favor of each of the Plaintiffs on all counts of the Complaint;

b. Awarding each of the Plaintiffs monetary damages, subject to proof and in an amount to be determined at trial, including but not limited to fees and costs paid, debts incurred, and wages promised but not paid;

c.  Awarding each of the Plaintiffs consequential damages, including but not limited to the loss of assets and of educational and business opportunities as a result of Defendants' illegal conduct;

d. Awarding each of the Plaintiffs damages for the mental anguish and pain and suffering Plaintiffs experienced as a result of being forced to labor against their will in horrific conditions and subjecting them to serious injuries and death;

e. Awarding each of the Plaintiffs punitive and exemplary damages;

f.  Awarding Plaintiffs any and all other damages allowed by law according to proof to be determined at time of trial in this matter;

g. Awarding Plaintiffs reasonable attorneys' fees and costs;

h. Award all Plaintiffs injunctive relief, disgorgement of all profits resulting from these unfair business practices alleged herein such that restitution is made to the general public;

i. Ordering Defendants Apple, Alphabet, Dell, Microsoft and Tesla to create a fund, in an amount to be determined at trial, to fund appropriate medical care for Plaintiffs and members of the class who were injured while mining cobalt for Defendants, conduct medical monitoring for

negative health impacts for Plaintiffs and members of the class who were

exposed to cobalt and other toxic chemicals while mining cobalt for

Defendants, and clean up the environmental impacts caused by

Defendants' use of suppliers for cobalt that failed to take any steps to

protect the environment where they were mining for cobalt; and

i. Awarding such other relief as the Court deems just and equitable.

Respectfully submitted this 16th day of December 2019

> s/ *Terrence P. Collingsworth*
> Terrence P. Collingsworth
> Executive Director
> INTERNATIONAL RIGHTS ADVOCATES
>> 621 Maryland Ave. NE
>> Washington, D.C. 20002
>> 202-543-5811
>> tc@iradvocates.org
> Attorneys for Plaintiffs