TERRENCE COLLINGSWORTH
(DC Bar # 471830)
International Rights Advocates
621 Maryland Ave NE
Washington, D.C. 20002
Tel: 202-543-5811
E-mail: tc@iradvocates.org

*Counsel for Plaintiffs*

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| JANE DOE 1 *et al.* ,<br><br>        Plaintiffs,<br><br>   v.<br>APPLE INC. *et al.*,<br><br>        Defendants | **FIRST AMENDED COMPLAINT**<br><br><br>**Case No. CV: 1:19-cv-03737 (CJN)** |

## I.   <u>NATURE OF THE ACTION</u>

1.      Pursuant to the Court's May 27, 2020 Minute Order and the parties'
Joint Stipulation for Scheduling Filing of Amended Complaint and Motion to
Dismiss Briefing, ECF No. 23, Plaintiffs hereby file their First Amended
Complaint.

2.      Defendants Apple Inc. ("Apple"), Alphabet, Inc. ("Alphabet")(which is
the parent company of Google LLC ("Google")), Dell Technologies Inc. ("Dell"),

Microsoft Inc. ("Microsoft"), and Tesla Inc. ("Tesla") are knowingly benefiting from and aiding and abetting the cruel and brutal use of young children in the Democratic Republic of Congo ("DRC") to mine cobalt, a key component of every rechargeable lithium-ion battery used in the electronic devices these companies manufacture. The young children mining cobalt for Defendants are not merely being forced to work full-time, extremely hazardous mining jobs at the expense of their educations and futures; they are being regularly maimed and killed by tunnel collapses and other known dangers common to cobalt mining in DRC. The following photo is of Plaintiff John Doe 5's crushed legs. He was mining cobalt in a tunnel with no support beams and no safety equipment for Congo Dongfang Mining, which is part of Huayou Cobalt, which sells cobalt to Defendants Apple and Microsoft.  He is typical of the children maimed by cobalt mining in the DRC, where production has soared under extremely primitive conditions to meet the demand for cobalt caused by the tech boom led by Defendants.



Plaintiff John Doe 5's crushed legs

3.      Defendants Apple, Alphabet, Dell, Microsoft, and Tesla are merely the latest to join the list of rapacious exploiters that have given the DRC and its people a particularly horrific history of being pillaged, plundered, brutalized and abused. The area that is now the DRC had a relatively large population and was fertile ground for the slave traders. Between the 16th and 19th centuries, several million slaves were taken from the Congo basin alone. In the mid-19th century, when slavery was finally made illegal in most of the world, the Congo received a brief respite. However, as industrialization began in earnest, a new breed of greedy and violent exploiters returned to Africa to brutalize and enslave people in their home countries and extract natural resources. In the late 1880s, King Leopold II of Belgium seized the Congo as his personal private property in a bid to be a colonial power. While

3

purporting to bring Christianity and civilization to the "Congo Free State," he instead deployed a brutal private army to impose a system of forced labor. He imposed strict quotas to compel villagers to deliver ivory to his collectors. Then, the rubber craze hit and, unfortunately for the people of the Congo, the forests of the Congo grew natural rubber trees. Leopold imposed a second brutal quota system on villagers to harvest raw latex to make rubber. Villages that did not cooperate were razed and noncompliant workers were punished with amputation by machete or by execution. The horrors of this period are graphically depicted in Adam Hochschild's book, ***King Leopold's Ghost***, as well as in Joseph Conrad's ***Heart of Darkness***.

4.      Shortly before Leopold's death in 1909, he sold the Congo Free State to the Belgian state, a transaction that merely changed the beneficiaries of the brutal exploitation of the people and resources of the Congo. Independence brought little change to the DRC[1] in 1960 as the people then suffered through some of the most corrupt leaders imaginable.  In succession, Mobutu Sese Seko, Laurent-Désiré Kabila, and Joseph Kabila each stole more than the last while the people of the DRC lived in extreme poverty despite their homeland's vast natural resources.

5.      The modern tech boom brought a new wave of brutal exploitation to the people of the DRC. The DRC is particularly rich in many minerals needed for the manufacture of the various products made by Defendants Apple, Alphabet, Dell, Microsoft, and Tesla. The DRC is rich in tin, copper, tungsten, gold, and tantalum,

---

[1] The country was first called the Republic of Congo, then the DRC, then Zaire, then back to the present name of DRC.

but these minerals are widely available in other places. On the other hand, approximately two-thirds of the global supply of cobalt is mined in the "copper belt" region of Haut-Katanga and Lualaba Provinces in the DRC. Cobalt is a key component of every rechargeable lithium-ion battery in all of the gadgets made by Defendants and all other tech and electric car companies in the world.[2] The tech boom has brought on the latest wave of cruel exploitation fueled by greed, corruption and indifference to a population of powerless, starving Congolese people.

6.      The Plaintiffs here are a representative group of children forced by extreme poverty to leave school and forced by hunger and desperation to pursue the only option in their region of the DRC to avoid starvation -- become "artisanal" cobalt miners. They are officially referred to as "artisanal" miners to obscure the reality of a large informal sector of people, including young children, who go to the areas where cobalt is found and use primitive tools to dig and tunnel for cobalt without any safety equipment and or any structural support in the tunnels. Major tunnel collapses are common. Miners are regularly maimed or killed when a tunnel collapses, and the bodies of those trapped in the darkness of rubble are frequently never recovered.

---

[2] Plaintiffs have brought suit against a first group of companies, Defendants Apple Inc., Alphabet Inc., Dell Inc., Microsoft Inc., and Tesla, based on a number of factors. Plaintiffs are conducting additional research and expect to add others using cobalt from the DRC that is mined by young children performing hazardous work and facing extreme danger.

7.    Defendants Apple, Alphabet, Dell, Microsoft, and Tesla are knowingly benefiting from and providing substantial support to this "artisanal" mining system in the DRC. Defendants know, and have known for a significant period of time, that DRC's cobalt mining sector is dependent upon children, with males performing the most hazardous work in the primitive cobalt mines, including tunnel digging. These boys are working under stone-age conditions for paltry pay and at immense personal risk to provide cobalt that is essential to the so-called "high tech" sector dominated by Defendants and other companies. Every smartphone, tablet, laptop, electric vehicle, or other device containing a lithium-ion rechargeable battery requires cobalt in order to recharge. Put simply, the hundreds of billions of dollars generated by the Defendants each year would not be possible without the cheap labor of cobalt miners in the DRC.

8.    Plaintiffs Jane Doe 1, based on the death in a mining accident when he was a minor child of her nephew and legal dependent, James Doe 1; John Doe 1, who was severely injured in a mining accident when he was a minor child; John Doe 2  based on the death of his son, James Doe 2, in a mining accident when he was a minor child; Jenna Roe 3, on behalf of her minor child son, John Doe 3, who was severely injured in a mining accident; James Doe 4, on behalf of his minor child son, John Doe 4, who was severely injured in a mining accident;  John Doe 5, who was severely injured in a mining accident when he was a minor child;  Jenna Doe 6, on behalf of her minor son John Doe 6, who was severely injured in a mining accident;

Jane Doe 2, based on the death in a mining accident when he was a minor child of her brother and legal dependent, Joshua Doe 2; Jenna Doe 7, on behalf of her minor son John Doe 7, who was severely injured in a mining accident; Jenna Doe 8, on behalf of her minor son John Doe 8, who was severely injured in a mining accident; John Doe 9, who was severely injured in a mining accident when he was a minor child; Jenna Doe 10, on behalf of her minor son John Doe 10, who was severely injured in a mining accident; Jenna Doe 11, on behalf of her minor son John Doe 11, who was severely injured in a mining accident; Jane Doe 3, based on the death in a mining accident when he was a minor child of her son James Doe 3; John Doe 12 based on the death in a mining accident when he was a minor child of his younger brother and legal dependent, James Doe 12; and John Doe 13, who was severely injured in a mining accident when he was a minor child, bring this action against Defendants on behalf of themselves and all other similarly situated current and former child workers who are required to perform extremely hazardous work in cobalt mining operations within the Haut-Katanga and Lualaba Provinces of the DRC which include the cobalt mining areas of Kolwezi, Fungurume, Likasi, Kambove, Kipushi, and Lubumbashi. Plaintiffs assert claims for forced child labor and trafficking in violation of the Trafficking Victims Protection Reauthorization Act ("TVPRA"), 18 U.S.C. § 1595 *et. seq.* Plaintiffs also seek relief based on common law claims of unjust enrichment, negligent supervision, and intentional infliction of emotional distress.

9.     Plaintiffs herein are representative of the child cobalt miners, some as young as six years of age, who work in exceedingly harsh, hazardous, and toxic conditions that are on the extreme end of "the worst forms of child labor" prohibited by ILO Convention No. 182. Some of the child miners are also trafficked. Plaintiffs and the other child miners producing cobalt for Defendants Apple, Alphabet, Dell, Microsoft, and Tesla typically earn between two to three U.S. dollars per day and, in many cases even less than that, as they perform backbreaking and hazardous work that will likely kill or maim them. Based on indisputable research, cobalt mined in the DRC is listed on the U.S. Department of Labor's International Labor Affairs Bureau's List of Goods Produced with Child Labor.[3]

10.     Further, the horrors of the plight of these children has been widely reported in the media. For example, on September 30, 2016, the <u>Washington Post</u> published a major exposé by Todd Frankel, *Cobalt Pipeline, Tracing the path from deadly hand-dug mines in Congo to consumers' phones and laptops*,[4] which specifically discussed the willful ignorance of companies like Defendants that are purchasing DRC cobalt without regard to whether it was mined by children, who are forced to perform hazardous labor, like Plaintiffs herein.

11.     In addition, Siddharth Kara, who has been researching and reporting on this issue and is serving as an expert witness for the Plaintiffs in this case,

---

[3] US Department of Labor, List of Goods Produced by Child Labor or Forced Labor, available at www.dol.gov/ilab/reports/child-labor/list-of-goods.
[4] https://www.washingtonpost.com/graphics/business/batteries/congo-cobalt-mining-for-lithium-ion-battery/?tid=lk_inline_manual_3

published an October 12, 2018 article in <u>The Guardian</u>, *Is your phone tainted by the misery of the 35,000 children in Congo's mines?*[5] Kara has conducted an academic survey of working conditions in the southeastern provinces of the DRC, and based on 303 completed cases, has learned, *inter alia*, that children under the age of 14 years earn an average of $0.81 per day, adult females earn an average of $1.02 per day, and adult males earn an average of $2.04 per day. Children are primarily coerced into cobalt mining work due to injury or death suffered by parents in cobalt mining, the inability to pay school fees, or population displacement when their home village is bulldozed to create space for a new industrial mining site. In an August 5, 2017 article in the <u>Mail on Sunday</u> by Barbara Jones, *Child miners aged four living a hell on Earth so YOU can drive an electric car*,[6] the author observes, "No one knows quite how many children have died mining cobalt in the Katanga region in the south-east of the country. The UN estimates 80 a year, but many more deaths go unregistered, with the bodies buried in the rubble of collapsed tunnels. Others survive but with chronic diseases which destroy their young lives. Girls as young as ten in the mines are subjected to sexual attacks and many become pregnant."

12.     In 2016, Amnesty International published a major report on the horrific conditions for child laborers mining cobalt in the DRC, *This Is What We Die For –*

---

[5]   https://www.theguardian.com/global-development/2018/oct/12/phone-misery-children-congo-cobalt-mines-drc#img-1
[6] https://www.dailymail.co.uk/news/article-4764208/Child-miners-aged-four-living-hell-Earth.html

*Human Rights Abuses in the Democratic Republic of Congo Power the Global Trade in Cobalt.* (hereinafter the "Amnesty Report").[7] The report states "[i]t is widely recognized internationally that the involvement of children in mining constitutes one of the worst forms of child labour, which governments are required to prohibit and eliminate. The nature of the work that [Amnesty's] researchers found that the children do in artisanal cobalt mining in the DRC is hazardous, and likely to harm children's health and safety."[8] The Amnesty Report further states, "[i]t is no secret that children mine cobalt in the DRC. The US Department of Labor has listed it as a good produced by child labour since at least 2009. Several non-governmental organisations (NGOs) have also published studies on child labour in Katangan mines. UNICEF estimated in 2014 that approximately 40,000 boys and girls work in all the mines across the whole of the former province, many of them involved in cobalt mining. In 2013, World Vision published a detailed study of children working in the artisanal mines of Kambove."[9]

13.     Plaintiffs' counsel and their research team have independently traveled to the cobalt mining areas of DRC and have documented and photographed the brutal conditions for children mining cobalt for use by Defendants. The research team included Siddharth Kara, a leading expert on modern slavery and child labor. He has documented several thousand slaves and child laborers in more than fifty

---

[7] www.amnesty.org
[8] *Id.* at 6.
[9] *Id.* at 28 (footnotes omitted).

countries across nineteen years of research and advises the United Nations, several governments, charitable foundations, and non-profit organizations on anti-slavery policy and law. In addition to his article on cobalt mining in the DRC published in the **Guardian**,  Kara is the author of three books on modern slavery and human trafficking: *Modern Slavery: A Global Perspective* (Columbia University Press, 2017), *Bonded Labor: Tackling the System of Slavery in South Asia* (Columbia University Press, 2012), and *Sex Trafficking: Inside the Business of Modern Slavery* (Columbia University Press, 2009). Kara has also published two academic reports - "Tainted Garments" (UC Berkeley, 2019) and "Tainted Carpets" (Harvard University, 2014) – that document forced and child labor at the bottom of specific industries' global supply chains.  Kara has taken two trips to the DRC and has conducted extensive research on forced labor and child labor in cobalt mining.  Kara holds academic positions at the Harvard Kennedy School, the Harvard School of Public Health, and the University of California, Berkeley.

14.    The research team also included Dr. Roger-Claude Liwanga, a DRC national with extensive experience researching child labor and trafficking in his home country. He is a fellow on Human Trafficking and Forced Labor with the FXB Center for Health and Human Rights at Harvard University. Since fall 2017, Dr. Liwanga has been adjunct professor at the Emory University School of Law, where he teaches the Child Protection and International Human Rights course. Among his relevant publications are a book chapter, in **Research Handbook on**

***Child Migration*** (Edward Elgar Publishing, 2018), and a book, ***Child Mining in an Era of High-Technology: Understanding the Roots, Conditions and Effects of Labor Exploitation in the Democratic Republic of Congo*** (Alpha Academic Press, 2017). Previously, Dr. Liwanga published a June 26, 2013 article in The CNN, *Child miners face death for tech,*[10] and produced a short documentary, *Children of the Mines*, which was aired on WCVB-ABC TV in Boston on January 12, 2014.[11]

15.     The following are photos of young children, none of whom are Plaintiffs in this case, mining cobalt in DRC that were taken by Plaintiffs' research team during their 2017-19 trips to DRC:

---

[10] http://thecnnfreedomproject.blogs.cnn.com/2013/06/26/child-miners-face-death-for-tech/
[11] https://www.wcvb.com/article/january-12-2014-child-miners-in-the-democratic-republic-of-the-congo/8200142















16.     There is no question that Defendants have specific knowledge that the cobalt used in their various products includes cobalt produced by children working in DRC under extremely hazardous conditions, that serious mining accidents are common due to the primitive conditions and complete lack of safety precautions in the mines, and that hundreds, if not thousands, of children have been maimed or killed to produce the cobalt needed for the world's modern tech gadgets produced by Defendants and other companies.

17.     The Defendants are large consumer companies that are extremely sensitive about their corporate image and have internal processes to identify significant risks in their supply chains. Defendant Apple, for example, has an

extensive internal "corporate social responsibility" department that repeatedly warned senior management about child labor being used to mine cobalt in horrific conditions. On information and belief, Apple fired at least one manager in charge of reporting on cobalt mining conditions in DRC because he or she provided persistent written warnings to the company.

18.     The other Defendant companies, Tesla, Dell, Microsoft, and Alphabet/Google, certainly have similar risk assessment departments or use outside firms that have advised them of the conditions facing child cobalt miners in the companies' direct supply chain. To the extent that any Defendants deny specific knowledge of horrific forced child labor in their supply chains, Plaintiffs should be able to obtain discovery on the specific internal knowledge each Defendant company had based on internal reporting and risk assessment.

19.     Defendants are knowingly participating in, supporting, and providing the essential market for cobalt that has caused the explosion of production by young children. Indeed, taking cues from the traditional corporate coverup scheme, Defendants Apple, Alphabet, Dell, and Microsoft have joined and supported "model" mining programs in DRC to create the false impression that they have acted to prevent the horrors of cobalt mining in the DRC by children.

20.     Rather than taking meaningful action to prevent further deaths and maiming of children in the DRC cobalt mines, Defendants Apple, Alphabet, Dell, Microsoft, and Tesla claim to have "voluntary programs" ***to stop themselves*** from

using prohibited child labor and forced labor in their supply chains. *See, e.g.*, Apple's *2018 Statement on Efforts to Combat Human Trafficking and Slavery in Our Business and Supply Chain*,[12] which states at p. 5:

> Apple's program to prevent child labor in its DRC supply chain is based on Apple's belief that empowering independent voices in the supply chain is critical to identifying, assessing, and remedying risks related to human trafficking and involuntary labor. In 2018, we continued to provide funding to the Fund for Global Human Rights, an organization that supports local human rights defenders and local activists in multiple countries, including in the DRC. Apple also continued to support the International Tin Association's International Tin Supply Chain Initiative whistleblowing mechanism in the DRC that allows people to anonymously voice concerns in their local language related to the extraction, trade, handling, and export of minerals so allegations of misconduct can be surfaced and reported.

21. Apple's "program" is typical for the industry. International Rights Advocates, counsel for Plaintiffs, has detailed research on the nearly identical "programs" announced by co-Defendants Alphabet, Dell, Microsoft, and Tesla, as well as those of most other tech companies using cobalt mined in the DRC. The fact that these programs were announced is merely evidence that the companies know they have serious forced child labor problems in their DRC supply chains for cobalt, and they hoped that this minimal first step would postpone solving the problem. If the stakes were not so serious for children currently mining cobalt for the benefit of these tech giants, programs like Apple's would merely be laughable.

---

[12]    https://www.apple.com/supplier-responsibility/pdf/Apple-Combat-Human-Trafficking-and-Slavery-in-Supply-Chain-2018.pdf (last visited September 6, 2019).

***Until they are forced to do better***, Apple and the other companies are merely assuring the consumers of their expensive products that the problem is solved by their "policies." Essentially the companies are saying that illiterate, desperately poor, and exceedingly vulnerable people living in the DRC, one of the most repressive countries in the world, will be able to figure out Apple's complaint mechanism and report supply chain violations. Further, Plaintiffs and others similarly situated cannot afford personal computers or iPhones, and they do not have internet or cell phone access to connect to the outside world. Finally, Plaintiffs and others similarly situated know, and Defendants know or should know, the corrupt DRC government that fails to regulate health and safety in the mining sector and allows artisanal miners to be routinely killed and maimed is going to allow the mining companies to retaliate with impunity against any whistleblowers. Indeed, the small NGO that coordinated Plaintiffs' connection to counsel for Plaintiffs faced immediate retaliation when this case was filed in December 2019 and the head of the NGO had to flee with his family to Zambia.

## II.   JURISDICTION AND VENUE

22.   Plaintiffs bring their claims in this judicial district in the United States because such claims cannot be maintained in their home country of DRC, as there is currently no law in the DRC whereby Plaintiffs could seek civil damages for their

injuries against the major end users of cobalt operating outside of the country. Further, the claims cannot be brought in DRC because the judicial system is notoriously corrupt, virtually non-functioning, and would not offer any effective remedy for Plaintiffs' claims. It is also likely that both Plaintiffs and their attorneys would be placed in danger due to the ongoing civil unrest in DRC and the demonstrable hostility in the DRC towards anyone who openly criticizes the government or is viewed as attacking the mining industry. Further, Plaintiffs bring their claims in the United States as the United States has provided a forum for such human rights lawsuits with the passage of the TVPRA amendments in 2013, which explicitly provide for extraterritorial jurisdiction. *See* 18 U.S.C. § 1596. Finally, the policymaking that facilitated the harms Plaintiffs suffered was the product of decisions made in the United States by Defendants. Thus, Plaintiffs do not have the "practical ability to litigate" their claims in DRC. *See Reid-Walen v. Hansen*, 933 F.2d 1390, 1401 (8th Cir. 1991).

23.     This case is brought under the TVPRA, 18 U.S.C. § 1596, for violations of 18 U.S.C. §§ 1581, 1584, 1589, and 1590. The offenders are nationals of the United States or are present in the United States, irrespective of nationality, providing this Court with federal question jurisdiction pursuant to 28 U.S.C. § 1331. 18 U.S.C. § 1596 explicitly grants United States courts extraterritorial jurisdiction for Plaintiffs' TVPRA claims, all of which accrued after December 23, 2008, the effective date of § 1596.

24.     Plaintiffs' state law claims arise out of the same case or controversy as their federal law claims and involve a common nucleus of operative facts. All injuries Plaintiffs suffered were the result of their being trafficked and subjected to harsh conditions performing forced labor. Thus, this Court also has supplemental jurisdiction over Plaintiffs' state law claims under 28 U.S.C. § 1367.

25.     This Court also has jurisdiction pursuant to 28 U.S.C. § 1332 (a)(2) based on diversity of citizenship. All Plaintiffs are foreign nationals as well as citizens and residents of DRC and each of their claims for damages exceeds $75,000. All Defendants are U.S. corporations headquartered in the United States.

26.     This Court has personal jurisdiction over Defendants Apple, Alphabet, Dell, Microsoft, and Tesla because they are all U.S. resident companies and they do substantial and continuous business within the District of Columbia. The long arm statute of the District of Columbia, D.C. Code § 13-423(a)(1), uses the same standard as the due process clause of the Constitution, whether there are "minimum contacts." "Section (a)(1)'s 'transacting any business' clause generally has been interpreted to be coextensive with the Constitution's due process requirements and thus to merge into a single inquiry." *GTE New Media Servs. Inc. v. BellSouth Corp.*, 199 F.3d 1343, 1347 (D.C. Cir. 2000). "[The] 'transacting any business' clause has been interpreted to provide jurisdiction to the full extent allowed by the Due Process Clause." . . . "Therefore, the 'statutory and constitutional jurisdictional questions, which are usually distinct, merge into a

single inquiry here.'" *United States v. Ferrara*, 54 F.3d 825, 828 (D.C. Cir. 1995). *See also Toumazou v. Turkish Republic of Northern Cyprus*, 71 F. Supp. 3d 7, 15-16 (D.D.C. 2014) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474-75 (the "transacting business" requirement of D.C. Code § 13-423(a)(1) requires that a defendant "'purposefully avail[ed] itself of the privilege of conducting business within the forum state'" and that it has established sufficient minimum contacts in the forum state so that it 'should reasonably anticipate being hailed into court there.'")). All of the Defendants conduct significant business in the District of Columbia such that they have well more than the "minimum contacts" required for this Court to exercise personal jurisdiction over them.

27.    Under 28 U.S.C. §§ 1391(b)(3) and (c)(2), venue over the collective Defendants is proper in this judicial district. Based on subsection (b)(3), venue is proper because there is no single judicial district where all Defendants are headquartered, and this judicial district is one where all Defendants are subject to personal jurisdiction. Further, based on subsection c(2), all Defendants are deemed to reside in this judicial district because they are all subject to personal jurisdiction in this district.

## III.   PARTIES

### A.   <u>Former Child Cobalt Miners</u>

28.   Plaintiffs bring this action using pseudonyms due to fear of retaliation against them and their families by persons, including corrupt government officials, who financially benefit in DRC from forced child labor mining cobalt. Plaintiffs' case not only threatens to expose criminalized elements within the cobalt sector, but also to dismantle the source of its significant profits: cheap labor of abused child workers. For this reason, Plaintiffs' lives would be in great danger if their names were exposed to the public. This Court granted Plaintiffs' motion to proceed using pseudonyms based on Plaintiffs' showing of a reasonable fear of retaliation. *See* ECF No. 5.

29.   All the child workers described in the following paragraphs went to work as artisanal cobalt miners at a young age. As Defendants and all participants in the venture, described in paragraphs 99-110, *infra*, know, the mining belt of the DRC has a steady supply of boys who are forced to drop out of school because they can't pay the school fees and who in turn are forced to work in cobalt mining or some other mining sector because there are no other ways to earn money in that area. Defendants and all members of the venture know that these boys are desperate and have no choice but to either starve or work as a miner and risk their lives for a paltry pay of about a dollar a day. The small pay is just enough to keep them and their

23

family members from starving and allowing them to return to work the next day. This vicious cycle of intentional exploitation leaves children who are too young to consent to risking their lives with extremely hazardous work with no choice but to do this dangerous work or starve.

30.     Jane Doe 1 was the legal guardian of her nephew, James Doe 1, who died while working in a cobalt mine on April 16, 2018. He was born March 17, 2001, so he was 17 when he died. He was forced to drop out of school after the second grade because his family could not pay the $6.00 monthly school fees charged by the government school since the government does not provide sufficient resources to operate the school without such fees. Facing starvation and lacking any other options for survival, James Doe 1 first started working as a young child as a surface digger picking up tailings at a cobalt mine and selling what he found for small amounts of money. At the age of 15, he joined a group of other boys and young men and began digging tunnels at a copper-cobalt mine that was originally operated by the state-run entity, Gécamines. The mine was Mashhamba East, near the village of Kapata. At the time of James Doe 1's death, the mine was operated by Kamoto Copper Company (KCC), which is owned and controlled by mining giant Glencore plc ("Glencore"), which was founded by convicted tax evader and illegal trader Marc Rich and is known for widespread violations of human rights and environmental laws, as well as participation in rampant corruption all over the world. In the venture described in paragraphs 99-110, *infra*, Glencore sells cobalt to Umicore, NV

"(hereinafter "Umicore"), a Belgian company that had its origins as a participant in King Leopold's brutal exploitation of the Congo. Umicore processes the cobalt mined by Glencore with the forced labor of Plaintiffs and thousands of other child miners in the DRC, and then supplies the refined cobalt to Apple, Alphabet, Samsung SDI, Microsoft and LG Chem (which supplies Dell and Tesla) for use in cobalt-containing batteries. On or about June 16, 2020, Defendant Tesla finalized an agreement with Glencore to obtain ownership of or exclusive rights to a major portion of its cobalt production in the DRC. Plaintiffs will seek discovery of this arrangement to determine the details and how this likely effects Tesla's direct liability for Glencore's past and future liability for injuries to certain Plaintiffs and members of the class.

31.     James Doe 1's weekly earnings of between $17 and $18 were a major source of support for Jane Doe 1 and the other seven children who live with her. The day that James Doe 1 died, he was working inside a tunnel at the mine. Other children began running out of the mine because they were scared by some soldiers who were entering. James Doe 1 also began to leave the mine, but the tunnel collapsed and killed him. Jane Doe 1 also had a cousin who was killed in a mine collapse on September 21, 2019 at a mining site called Kamilombe, operated by Taruga Minerals of Australia. She is devastated by the death and injury she has experienced and stated that "our children are dying like dogs."

32.     John Doe 1 was born on March 7, 2001. He went to school for four years and then was forced to drop out because his family could not afford the $6.00 monthly school fees. He was nine years old when he quit school and went to work as a surface digger in the large mining area near the village of Kapata, where he would pick up loose rocks containing cobalt and sell them. When he was 15, he went to work at the Lac Malo B5 mine, operated by Kamoto Copper Company (KCC), which is owned and controlled by Glencore, which sells cobalt to Umicore. Umicore then processes the cobalt mined by Glencore with the forced labor of Plaintiffs and thousands of other child miners in the DRC, and supplies the refined cobalt to Apple, Alphabet, Samsung SDI, Microsoft and LG Chem (which supplies Dell and Tesla) for use in cobalt-containing batteries. On or about June 16, 2020, Defendant Tesla finalized an agreement with Glencore to obtain ownership of or exclusive rights to a major portion of its cobalt production in the DRC. Plaintiffs will seek discovery of this arrangement to determine the details and how this likely effects Tesla's direct liability for Glencore's past and future liability for injuries to certain Plaintiffs and members of the class.

33.     John Doe 1's primary job was working as a human mule. He worked on top of a steep mountain of unsteady rock rubble. A few older, adult miners filled bags with rocks containing cobalt, each weighing at least 30 kilograms. The bags would be placed on his back by the miners and then he would attach a head strap to hold the bag on his back. He would then walk down to the bottom of the mountain,

rinse the rocks in Lac Malo, and carry the bag to the depot where the rocks were collected, covering a distance of over 700 meters. For each round trip he was paid 10-15 cents (U.S.) and would typically do seven trips per day, earning about 70-95 cents (U.S.) per day.  Two of his three brothers also worked in similar jobs at KCC mines around Kapata. They all gave their earnings to their parents to support the family. On September 15, 2016, while walking down the mountain with a bag of cobalt on his back, John Doe 1 stepped down and fell into a tunnel. He fell five to six meters and hit the rock floor at the bottom of the tunnel. He lost consciousness and some workers pulled him out of the hole and contacted his parents. His mother and father came to the mine and saw his body lying on the ground, where he had been left alone. They sat John Doe 1 on a bicycle and walked him to the local hospital. They could do nothing for him there, so they went to a hospital across the border in Zambia. There, the doctors examined him and found that he had broken his spine in three different places. John Doe 1 and his parents stayed in Zambia for a year while he  received treatment for the physical wounds on his body. The limited facilities in Zambia did little to fix the damage to John Doe 1's spine. He is now completely paralyzed from his chest down and he can barely use his arms. He is unable to help himself, so his parents are now acting as his caregivers. He has no money for further medical treatment, and he will never be able to walk again. He still feels pain on a daily basis. His mother exclaimed in distress that she is "heartbroken every time I see children of my son's age playing or going to school."

34.     John Doe 2 is the father of James Doe 2 who died in a mining accident on January 14, 2019.  James Doe 2 was born on April 13, 2002, so he was 16 when he died. John Doe 2 was a carpenter and in 2013 he had a serious injury at work that disabled him such that he could not work anymore. His wife left him with their eight children because he could no longer earn money. After his father's accident, James Doe 2 had to drop out of school in the sixth grade. His father could no longer pay the monthly school fees of roughly $6.00. In 2011, when he was 11 years old, James Doe 2 went to work to support his family. He also took his three younger brothers with him to work as artisanal miners picking up loose rocks of cobalt to sell. They went to an industrial mining site, Tilwezembe, about 25 kilometers east of Kolwezi, near the village of Mupanji next to the Lualaba River. The mineral rights of this mine are owned and controlled by Glencore, which sells cobalt to Umicore. Umicore then processes the cobalt mined by Glencore with the forced labor of Plaintiffs and thousands of other child miners in the DRC, and then supplies the refined cobalt to Apple, Alphabet, Samsung SDI, Microsoft and LG Chem (which supplies Dell and Tesla) for use in cobalt-containing batteries. On or about June 16, 2020, Defendant Tesla finalized an agreement with Glencore to obtain ownership of or exclusive rights to a major portion of its cobalt production in the DRC. Plaintiffs will seek discovery of this arrangement to determine the details and how this likely effects Tesla's direct liability for Glencore's past and future liability for injuries to certain Plaintiffs and members of the class.

35.     Based on the Congolese Mining Code, only Congolese nationals can work as artisanal miners, so Glencore arranged to set up a sham cooperative, CMKK (Coopérative Minière Maadini kwa Kilimo), with Congolese nationals as leaders. On or about June 16, 2020, Defendant Tesla finalized an agreement with Glencore to obtain ownership of or exclusive rights to a major portion of its cobalt production in the DRC. Plaintiffs will seek discovery of this arrangement to determine the details and how this likely effects Tesla's direct liability for Glencore's past and future liability for injuries to certain Plaintiffs and members of the class.

36.     The Glencore fronted and controlled CMKK put a Lebanese man known as "Ismail" in charge of buying the output of the artisanal miners at Tilwezembe to sell to Glencore. Ismail looked for children roaming around and put them to work for him. He had a large number of children in his gang of child miners. He directed their activities, took the proceeds of their work and paid them a small portion, just enough for subsistence living. He kept the rest of the money they would have earned. He made clear to them that they could only work in the area for him and that if they didn't do what he told them, they would not be able to work at CMKK, or the other mines in the area, and would be left to starve. The young boys who worked for him, including James Doe 2, were terrified of Ismail and did what he told them. James Doe 2 worked at the mine 6 days a week and earned 1.50-2.00 U.S. dollars a day. On January 14, 2019, James Doe 2 was working inside a tunnel that collapsed. He died in the collapse, and two other children were buried alive as well.

29

John Doe 2 was called to come and collect his son's body, which he did.  John Doe 2 lost his eldest son and the primary breadwinner of his family.

37.     John Doe 3 was born on December 24, 2002. He was severely injured in a mining accident on July 3, 2019. Because he is a minor, his mother and sole legal guardian, Jenna Roe 3 brings this claim on his behalf. Jenna Roe 3's husband died many years ago. She has seven children and John Doe 3 is her only son. He finished the fourth grade in school and then had to drop out because his mother could not pay his school fees of about $6.00 per month. He was about 11 when he left school. He did odd jobs and helped his mother with various odd jobs, including selling vegetables. When he was 14, John Doe 3 went to work in cobalt mining. He was walking around the town area near the mines and was approached by a labor broker, Mr. X, who told him he would put him to work. He took him to a mine operated by and controlled by CDM (Congo Dongfang Mining), which is a wholly-owned subsidiary of Zhejiang Huayou Cobalt ("Huayou Cobalt"), a notorious Chinese mining company that openly uses child miners in the DRC as part of its supply chain venture as described in paragraphs 99-110, *infra*. Huayou Cobalt sells cobalt to Defendants Apple, Dell, and Microsoft, and likely to other Defendants.  CDM and its local sister company COMUS (Compagnie Miniere de Musonoi) mine and process crude cobalt, which is then exported to Huayou Cobalt in mainland China. Mr. X organized nine boys to work for him, including John Doe 3, and provided them with three motorbikes, one for each team of three. The boys rode 45

kilometers each day from their village of Tshala to a mine near Kapata. Once each team filled three bags with cobalt rocks, one member of each team would haul the bags, each weighing 70-80 kilograms, to buying house number 555 in Musompo (operated by Chinese men), and then return to the mine to continue working. John Doe 3 and the others were required to give all of the proceeds of their work to Mr. X. He paid them collectively 130,000 Congolese Franc (about $81.00), or roughly $9 per week per child. Mr. X kept the vast majority of the money for himself. He appeared to have some connection to the Congolese government because he had Republican Guard security forces around him at times. John Doe 3 and the other boys were terrified of the soldiers because they had a reputation for brutality and operated in the DRC with complete impunity. Mr. X acted as if he was an influential person and the boys, including John Doe 3, understood they were required to work for him or they would not be able to earn any money to eat. On July 3, 2019, John Doe 3 was leaving the mine area on his motorbike loaded with three bags of cobalt with a total weight of at least 210 kilograms. As he was merging onto the main road he was hit by a large cobalt transport truck. He woke up the next day in the Gécamines hospital. His left leg had been amputated because it was completely smashed in the accident. The driver of the truck fled the scene and no assistance of any sort was provided by anyone to help John Doe 3 with his medical bills, so he owes the hospital significant funds. John Doe 3 was the primary breadwinner for his family so now he, his mother, and six sisters are completely destitute and are

reliant on help from other family members to survive. He lives in constant pain from the injury.



John Doe 3

38.     James Doe 4 brings a claim on behalf of his minor son, John Doe 4, who was severely injured in a mining accident at the Tilwezembe mining site, which is owned and controlled by Glencore, which sells cobalt to Umicore. Umicore then processes the cobalt mined by Glencore with the forced labor of Plaintiffs and thousands of other child miners in the DRC, and then supplies the refined cobalt to Apple, Alphabet, Samsung SDI, Microsoft and LG Chem (which supplies Dell and Tesla) for use in cobalt-containing batteries. On or about June 16, 2020, Defendant Tesla finalized an agreement with Glencore to obtain ownership of or exclusive rights to a major portion of its cobalt production in the DRC. Plaintiffs will seek discovery of this arrangement to determine the details and how this likely effects Tesla's direct liability for Glencore's past and future liability for injuries to certain Plaintiffs and members of the class.

39.     John Doe 4 dropped out of school in 2014 when he was in the third grade because his family could not afford the school fees of about $6.00 per month. This was in 2014. He stayed at home until 2016, and then he went to work at the Tilwezembe mining site when he was 11 years old. This is near the village of Mupanji next to the Lualaba River. He worked in an open pit mining area at Tilwezembe. He worked in a team of four with three other young boys. Three Chinese men coordinated the work of the boys at the mine site, directed where they were to dig, and then bought the cobalt rocks the boys gathered. There was a sham Congolese cooperative at the site, CMKK, to create the impression of Congolese control.

Glencore directs and controls CMKK and put a Lebanese man, Ismail, in charge of it. On information and belief, the three Chinese men who were directing John Doe 4 and the other child miners worked for Ismail. They often cheated the boys by saying the cobalt rocks were of low quality and not worth anything. John Doe 4 usually made $1 a day for doing highly dangerous work. He brought the money home and gave it to his father to support the family. Including John Doe 4, there were nine boys and two girls in the family. On May 7, 2019, John Doe 4 was digging in the pit with five other people when the pit wall collapsed on them. His elder brother, Robert Doe 4 died in the same accident He was born on February 8, 1994 and had been working at the mine since 2015. Robert Doe 4 left behind a wife and two children, one of whom was born after the accident.  John Doe 4 was taken to a small clinic nearby. His left leg was severely smashed, and he now has a metal bar inside to hold the bone in place. He is in constant pain and can no longer use the injured leg. He is unable to work as a result of the injury.



John Doe 4

40.    John Doe 5 was born on April 15, 2002. He started working as an artisanal miner while he was still in school. He worked at a mine in Musonoi operated by and controlled by CDM (Congo Dongfang Mining), which is wholly-owned by Huayou Cobalt, which sells cobalt to Defendants Apple, Dell, and Microsoft, and likely to other Defendants.  CDM and its local sister company COMUS (Compagnie Miniere de Musonoi) mine and process crude cobalt, which is then exported to Huayou Cobalt in mainland China. John Doe 5 arrived at the mine and worked from 5-7 am before going to school. He was a surface digger and filled bags with cobalt rocks

that he was forced to sell to Chinese buying houses located on the mine site. John Doe 5 had to quit school while in the eleventh grade because he could no longer afford the $6.00 monthly school fees. He then started working full-time at the same CDM mine. He worked in a team of five as tunnel diggers who had to crawl Spiderman-like down a narrow 50-meter shaft and then into a 100-meter tunnel horizontal to the surface as they followed a vein of cobalt. They had to drag their cobalt rocks to the bottom of the 50-meter hole, haul the rocks up, and then carry them in bags about another 100 meters to the buyers for paltry wages. On July 2, 2019, 40 people were gathered in a chamber at the base of the entrance shaft packing their cobalt rocks into bags and getting ready to climb out. The chamber ceiling collapsed on them. 35 people died on the spot; five others, including John Doe 5, were taken to the hospital, where three others died soon after. John Doe 5 was one of only two survivors. The dead included many child miners. Both of John Doe's legs were entirely crushed. His right leg now has an iron bar in it support the demolished bone; his left leg is still in a cast and the extent of the damage is not known. His hip bones were also broken, and he will never be able to walk again. He is in constant pain and will never be able to work. No one at the mine or the government provided any assistance to him, and his family is struggling to pay the bills for treatment.



John Doe 5

41.    Jenna Doe 6 brings a claim on behalf of her minor son John Doe 6. John Doe 6 was born on August 8, 2002 and went to school until the sixth grade, when he had to drop out because his family could not afford the school fees. Before he quit school, he worked as a surface digger of cobalt for a few hours in the morning

before school, and once he left school he worked full-time at the mine. At all times, he worked at the Tilwezembe mining site, which is owned and controlled by Glencore, which sells cobalt to Umicore. Umicore then processes the cobalt mined by Glencore with the forced labor of Plaintiffs and thousands of other child miners in the DRC, and then supplies the refined cobalt to Apple, Alphabet, Samsung SDI, Microsoft and LG Chem (which supplies Dell and Tesla) for use in cobalt-containing batteries. On or about June 16, 2020, Defendant Tesla finalized an agreement with Glencore to obtain ownership of or exclusive rights to a major portion of its cobalt production in the DRC. Plaintiffs will seek discovery of this arrangement to determine the details and how this likely effects Tesla's direct liability for Glencore's past and future liability for injuries to certain Plaintiffs and members of the class.

42.    From 2013 to 2016, John Doe 6 worked on a team of six boys that did all tasks in the cobalt mining process: they dug and bagged the rocks, they washed them, and then they carried them to a buying site controlled by a man named Ismail. The Glencore-fronted and controlled CMKK put Ismail in charge of buying the output of the artisanal miners to sell to Glencore. Ismail looked for children roaming around and put them to work for him. He had a large number of children in his gang of child miners. He directed their activities, took the proceeds of their work and paid them a small portion, just enough for subsistence living. He kept the rest of the money they would have earned. He made clear to them that they could only

work in the area for him and that if they didn't do what he told them, they would not be able to work for CMKK or the other mines in the area and would be left to starve. The young boys who worked for him, including John Doe 6, were terrified of Ismail and did what he told them. At the start of 2017, Ismail forced John Doe 6 and his crew to start working under a "Sponsor," Chief Wali, otherwise Ismail would no longer buy their cobalt. Chief Wali forced them into a debt bondage situation where he would advance food and small funds and then deduct these "costs" from the proceeds of the sale of their cobalt. The boys, including John Doe 6, feared they would otherwise starve so they continued working in this arrangement. Often John Doe 6 and his crew were paid nothing for their work as Chief Wali told them they owed all the proceeds in costs. At most, John Doe 6 earned about $2 per day for his work. Like most children working at the Tilwezembe mining site, John Doe 6 had to crawl Spiderman-like down a narrow 20-30-meter shaft and then into a 30-meter tunnel. He and his crew would then dig into smaller tunnels off the main tunnel. They had to drag their cobalt rocks to the bottom of the shaft, haul the rocks up, and then carry them in bags about another 100 meters to the buyers. On November 15, 2018, he was in a chamber alone filling up bags with cobalt rocks and the ceiling collapsed and crushed his leg. The other members of his crew fled the site fearing a larger collapse of the main tunnel. When it was clear that the collapse was limited, they went back and dug John Doe 6 out of the rock rubble. They took him to a clinic near the mine, where they transferred him to the main hospital in Kolwezi.

His left leg was completely crushed, and the doctors put in an iron bar to hold the bone together. He is in constant pain and can no longer walk on his left leg. He used to support his mother and now the family has lost that income. Jenna Doe 6 now sells vegetables to have some income. No one at the mine provided any assistance to John Doe 6. Chief Wali blamed him for the collapse, saying he was practicing witchcraft.



John Doe 6

43.     Jane Doe 2 brings a claim on behalf of her deceased brother, Joshua Doe 2, who died in a September 27, 2017 mining accident at the Tilwezembe mining site, which is owned and controlled by Glencore, which sells cobalt to Umicore. Umicore then processes the cobalt mined by Glencore with the forced labor of Plaintiffs and thousands of other child miners in the DRC, and then supplies the refined cobalt to

Apple, Alphabet, Samsung SDI, Microsoft and LG Chem (which supplies Dell and Tesla) for use in cobalt-containing batteries. On or about June 16, 2020, Defendant Tesla finalized an agreement with Glencore to obtain ownership of or exclusive rights to a major portion of its cobalt production in the DRC. Plaintiffs will seek discovery of this arrangement to determine the details and how this likely effects Tesla's direct liability for Glencore's past and future liability for injuries to certain Plaintiffs and members of the class.

44.     Joshua Doe 2's parents were both deceased and his elder sister, Jane Doe 2, was his guardian at the time of his death. Joshua Doe 2 went to school until the sixth grade and then dropped out because the family could not pay the school fees. He worked part-time at the mine in the mornings before school, and then worked full-time when he left school. Joshua Doe 2 worked at the mine though a "Sponsor" Guylain, who gathered children at Kayebela and organized them to work at the mine. On information and belief, because this was a Tilwezembe mining site, it was controlled by CMKK, which Glencore created to comply with DRC mining regulations and put under the direction of Ismail, for whom Guylain worked. Ismail, either directly or through subordinates, looked for children roaming around and put them to work in the cobalt mines. He had a large number of children in his gang of child miners. He directed their activities, took the proceeds of their work and paid them a small portion, just enough for subsistence living. He kept the rest of the money they would have earned. He made clear to them that they could only work

in the area for him and that if they didn't do what he told them, they would not be able to work for CMKK or the other mines in the area and would be left to starve. The young boys who worked for him, including John Doe 6, were terrified of Ismail and did what he told them. On September 27, 2017, Jane Doe 2 received a call from an uncle who also worked at the Tilwezembe mine, telling her that Joshua Doe 2 had been crushed to death in a massive collapse of a tunnel at the mine. Joshua Doe 2 was one of 17 bodies taken to the morgue in Kolwezi; an unknown number remain buried in the rock rubble of the collapse. Joshua Doe 2 contributed his earnings to the family support.

45.     Jenna Doe 7 brings this claim on behalf of her minor son, John Doe 7, who was born on May 4, 2003. His father died in 2011. He went to school until the sixth grade, and then he had to quit because the family could no longer pay his school fees of approximately $6 per month.  He is the youngest child of eight. In January 2018 he was recruited to work in the mine at Mashamba East near Kapata, which is controlled by Kamoto Copper Company (KCC), which is owned and controlled by Glencore, which sells cobalt to Umicore. Umicore then processes the cobalt mined by Glencore with the forced labor of Plaintiffs and thousands of other child miners in the DRC, and then supplies the refined cobalt to Apple, Alphabet, Samsung SDI, Microsoft and LG Chem (which supplies Dell and Tesla) for use in cobalt-containing batteries. On or about June 16, 2020, Defendant Tesla finalized an agreement with Glencore to obtain ownership of or exclusive rights to a major

portion of its cobalt production in the DRC. Plaintiffs will seek discovery of this arrangement to determine the details and how this likely effects Tesla's direct liability for Glencore's past and future liability for injuries to certain Plaintiffs and members of the class.

46.     Presidential Guards had managed to gain control of access to the mine site and recruited children, including John Doe 7, to work there. From January 2018 until June 25, 2019, he essentially worked for the Presidential Guards clearly with the knowledge and consent of KCC. He worked in a group of 10 and each day the team would dig and bag up to a ton of cobalt rock. They were required to give the bags to the Presidential Guards, who would sell it to the buying houses located at the mining site and pay the 10 children about $12 per day. John Doe 7 learned from other miners that he could make more money if he sold his cobalt rock directly to the buyers, cutting out the Presidential Guards as middlemen. John Doe 7 then proposed a deal with the five Presidential Guard he had been working for – he would dig for them each day but would take a portion for himself to sell directly to the buyers. Four of the five agreed but a fifth did not. When John Doe 7 started walking away with a bag of the cobalt rocks he had dug that day, the guard who disagreed shot him in the back without warning. John Doe 7 woke up in the hospital. The bullet had entered through his back and exited near his left armpit. He was severely injured and had to stay in the hospital for 6 weeks. The guard who shot him was not held accountable for anything and John Doe 7's family for required to pay the

hospital costs. He still suffers from pain of the injury and can no longer lift with his left arm.

47.     Jenna Doe 8 brings this claim on behalf of her minor son, John Doe 8, who was born on January 4, 2004. He went to school until the fifth grade and then dropped out because the family could not pay the school fees. He is the middle of three boys in the family and has two sisters. While he was still in school, he worked for a few hours each morning at the Lac Malo B5 mine, which is operated by Kamoto Copper Company (KCC), which is owned and controlled by Glencore, which sells cobalt to Umicore. Umicore then processes the cobalt mined by Glencore with the forced labor of Plaintiffs and thousands of other child miners in the DRC, and then supplies the refined cobalt to Apple, Alphabet, Samsung SDI, Microsoft and LG Chem (which supplies Dell and Tesla) for use in cobalt-containing batteries. On or about June 16, 2020, Defendant Tesla finalized an agreement with Glencore to obtain ownership of or exclusive rights to a major portion of its cobalt production in the DRC. Plaintiffs will seek discovery of this arrangement to determine the details and how this likely effects Tesla's direct liability for Glencore's past and future liability for injuries to certain Plaintiffs and members of the class.

48.     When he first started work, John Doe 8 picked up loose rocks and sold them to buying houses located at the mining site. Once he started full time, he began digging tunnels at the site to get higher quality cobalt. He worked in an area where

he had to drop down a seven-meter shaft and tunnel. He worked with two friends in a crew of  three. They each filled up their own bags and then hired motorbike transport to take the cobalt to buyers at Musompo. He typically received about $4 per day and had to give the motorbike transport $1.50. He gave his earnings to his mother. On July 7, 2017, he and his two friends were working together when the pit wall collapsed on him, burying him up to his chest. His two friends were not trapped. He woke up in a hospital, and his right leg had been smashed. He was 13 years old at the time of his mining accident. Most of the flesh on his right leg below the knee was ripped off and now his leg is severely disfigured, and he has difficulty walking. He misses playing soccer, which was a joy in his hard life. He has been unable to work since the injury.



John Doe 8

49.    John Doe 9 brings his claim for severe injuries to his leg in a mining accident he suffered on July 25, 2017. He was born on April 4, 2002. He went to school until the sixth grade and had to drop out when both of his parents died. He could not afford the school fees. In 2015, he started working full time at the

Tilwezembe mining site, which is owned and controlled by Glencore, which sells cobalt to Umicore. Umicore then processes the cobalt mined by Glencore with the forced labor of Plaintiffs and thousands of other child miners in the DRC, and then supplies the refined cobalt to Apple, Alphabet, Samsung SDI, Microsoft and LG Chem (which supplies Dell and Tesla) for use in cobalt-containing batteries. On or about June 16, 2020, Defendant Tesla finalized an agreement with Glencore to obtain ownership of or exclusive rights to a major portion of its cobalt production in the DRC. Plaintiffs will seek discovery of this arrangement to determine the details and how this likely effects Tesla's direct liability for Glencore's past and future liability for injuries to certain Plaintiffs and members of the class.

50.     When he started, John Doe 9 had a "sponsor," Ilunga, who had control over a specific pit at the mine. He recruited boys roaming the area to work the pit. He told them where and when to work and required them to sell their cobalt to Ismail. The Glencore-fronted and controlled CMKK put Ismail in charge of buying the output of the artisanal miners in and around Tilwezembe to sell to Glencore. Ismail had a large number of children in his gang of child miners. He directed their activities, took the proceeds of their work and paid them a small portion, just enough for subsistence living, and he kept the rest of the money they would have earned. He made clear to them that they could only work in the area for him and that if they didn't do what he told them, they would not be able to work at CMKK or the other

mines in the area and would be left to starve. The young boys who worked for him, including John Doe 9, were terrified of Ismail and did what he told them.

51.    When the pit wall collapsed at the mine he had been working at under Ilunga, John Doe 9 started mining wherever he could find cobalt, but to work at Tilwezembe, he was required to sell to Ismail, who directed him to sell to three other Lebanese brokers who worked with Ismail. No matter how much John Doe 9 produced, Ismail paid him about $2 per day. This was barely enough for bare subsistence for John Doe, but he feared that if he did not work under Ismail's terms he and his brother would starve.

52.    On July 25, 2017, he was working in a pit, and a wall collapsed and smashed his right leg. His younger brother, who also worked at the mine, took him to the hospital where the doctor placed an iron bar in his leg to support the smashed bone. No one, including Ismail, provided him with any financial assistance. He and his brother had to sell their home left to them by their deceased parents to pay the medical bills. The iron bar in John Doe 9's leg needs to be removed but he does not have the funds to have this done. John Doe 9 has no legal guardian because both of his parents are dead, and his only other family member is his younger brother with whom he lives. His brother is three years younger than him and works as a hauler under Ismail at the same mine where John Doe 9 was injured.



John Doe 9

53.     Jenna Doe 10 brings this claim on behalf of her minor son, John Doe 10,

who was born on September 18, 2002. John Doe 10 completed the ninth grade of

school. When he was 14 years old, he started going to work in the mines after school

was over at 1:30 pm each day. He worked at the Kamilombe No. 1 mine, which is

presently operated by the Australian mining company Taruga Minerals. The concession is owned by Kamoto Copper Company (KCC), which is owned and controlled by Glencore, which sells cobalt to Umicore. Umicore then processes the cobalt mined by Glencore with the forced labor of Plaintiffs and thousands of other child miners in the DRC, and then supplies the refined cobalt to Apple, Alphabet, Samsung SDI, Microsoft and LG Chem (which supplies Dell and Tesla) for use in cobalt-containing batteries. On or about June 16, 2020, Defendant Tesla finalized an agreement with Glencore to obtain ownership of or exclusive rights to a major portion of its cobalt production in the DRC. Plaintiffs will seek discovery of this arrangement to determine the details and how this likely effects Tesla's direct liability for Glencore's past and future liability for injuries to certain Plaintiffs and members of the class.

54.    John Doe 10 worked in a group of 30 miners on three teams that were organized by a boss at the mine, "Jean-Pi," who directed the boys where to work and dictated their conditions. John Doe 10 feared that if he did not follow Jean-Pi's directions, he would lose his income and he and his family would starve. He worked under extremely dangerous conditions so that he could help feed his family. John Doe 10 was on the digging team with 12 other boys and they dug a tunnel 35 meters down. There was also a transport team and a washing team. He earned between $3-5 a day for his work. On December 24, 2017, he was working at the mine inside the tunnel. There were six other boys in the tunnel with him and they were told by

another member of the team to pack up the cobalt rocks as they had and get out of the tunnel quickly because there were cracks in the walls. Suddenly there was an explosion of noise as the tunnel collapsed. John Doe 10 woke up in a hospital. His hip and left leg were smashed by the rocks that collapsed on him. He was 15 years old when he was crushed in the mine. His left leg is permanently damaged, and he will never be able to walk on it properly again. He continues to be in pain from the injury and does not have the money to get proper medical care.  He had to quit school once he was injured.

55.     Jenna Doe 11 brings this claim on behalf of her minor son, John Doe 11, who was born on September 7, 2003. Upon completing the seventh grade, in July 2017, John Doe 11 started working in a mine during his summer break. He was working part time until he completed the ninth grade of school. When he was 14 years old, he started working full time at the Lac Malo B5 mine, which is operated by Kamoto Copper Company (KCC), which is owned and controlled by Glencore, which sells cobalt to Umicore. Umicore then processes the cobalt mined by Glencore with the forced labor of Plaintiffs and thousands of other child miners in the DRC, and then supplies the refined cobalt to Apple, Alphabet, Samsung SDI, Microsoft and LG Chem (which supplies Dell and Tesla) for use in cobalt-containing batteries. On or about June 16, 2020, Defendant Tesla finalized an agreement with Glencore to obtain ownership of or exclusive rights to a major portion of its cobalt production in the DRC. Plaintiffs will seek discovery of this

arrangement to determine the details and how this likely effects Tesla's direct liability for Glencore's past and future liability for injuries to certain Plaintiffs and members of the class.

56.     John Doe 11's father worked in the Kamilombe mine, and John Doe 11 thought he could earn some extra money for school fees and notebooks "because life at home was not easy." John Doe 11 worked as a digger in a pit at the mine. The cobalt rocks he gathered in the pit were bought by "John" at the mine site. "John" was related to the Glencore mining site in some way, but Plaintiffs do not yet have the details. On information and belief, he directed the child miners to work, including John Doe 11, and required them to sell their cobalt to him only if they wanted to keep working and earning money at the site.

57.     John Doe 11 earned about $2 per day for his work. After just two weeks of working, he was severely injured on July 17, 2017, when the pit wall collapsed on him. He was buried by rocks and woke up in a hospital. Both of his hips and his legs were crushed. He spent three months in the hospital where they put casts on his legs and then fitted him for metal leg braces. He can no longer use either of his legs and must walk with crutches. He is in serious pain every day. He was 14 years old when he was crushed in the mine. He hopes to continue in school and study computers and business.



John Doe 11

58.     Jane Doe 3 is the mother of James Doe 3, who was killed in a mining

accident on April 26, 2018, when he was 14 years old. She brings the claim to recover

for the death of her son. James Doe 3 was born on July 2, 2004 and finished the

sixth grade of school. He had to quit because his family did not have money for

school fees. He worked with his mother for two years growing and selling vegetables. In early 2018, he went to work at the Tilwezembe mining site as a tunnel digger, which is owned and controlled by Glencore, which sells cobalt to Umicore. Umicore then processes the cobalt mined by Glencore with the forced labor of Plaintiffs and thousands of other child miners in the DRC, and then supplies the refined cobalt to Apple, Alphabet, Samsung SDI, Microsoft and LG Chem (which supplies Dell and Tesla) for use in cobalt-containing batteries. On or about June 16, 2020, Defendant Tesla finalized an agreement with Glencore to obtain ownership of or exclusive rights to a major portion of its cobalt production in the DRC. Plaintiffs will seek discovery of this arrangement to determine the details and how this likely effects Tesla's direct liability for Glencore's past and future liability for injuries to certain Plaintiffs and members of the class.

59.    James Doe 3 earned about $2 per day and gave his earnings to his mother. The area where he worked at the mine was controlled by Ismail, who the Glencore-fronted and controlled CMKK put in charge of buying the output of the artisanal miners at Tilwezembe to sell to Glencore. Ismail looked for children roaming around and put them to work for him. He had a large number of children in his gang of child miners. He directed their activities, took the proceeds of their work and paid them a small portion, just enough for subsistence living, and he kept the rest of the money they would have earned. He made clear to them that they could only work in the area for him and that if they didn't do what he told them, they

could not work at CMKK or the other mines in the area and would be left to starve. The young boys who worked for him, including James Doe 3, were terrified of Ismail and did what he told them.

60.     When Jane Doe heard on April 26, 2018 that her son was buried in a tunnel collapse, she and her husband raced to the mine. When they arrived, someone threw a rock at her and hit her eye. Her husband had to take her to the hospital, but her right eye is now permanently blind. When the parents checked with the mine they learned their son's body was trapped in the tunnel collapse and they were unable to recover his body. Numerous other children were buried alive in this same tunnel collapse.

61.     John Doe 12 brings this claim as the heir and legal representative of his younger brother James Doe 12, who was crushed and died when a tunnel collapsed on him while he was working at the Tilwezembe mining site, which is owned and controlled by Glencore, which sells cobalt to Umicore. Umicore then processes the cobalt mined by Glencore with the forced labor of Plaintiffs and thousands of other child miners in the DRC, and then supplies the refined cobalt to Apple, Alphabet, Samsung SDI, Microsoft and LG Chem (which supplies Dell and Tesla) for use in cobalt-containing batteries. On or about June 16, 2020, Defendant Tesla finalized an agreement with Glencore to obtain ownership of or exclusive rights to a major portion of its cobalt production in the DRC. Plaintiffs will seek discovery of this arrangement to determine the details and how this likely effects Tesla's direct liability

for Glencore's past and future liability for injuries to certain Plaintiffs and members of the class.

62.     James Doe 12 was born on April 4, 2004 and died in May 2018 when he was 14 years old. James Doe 12 had to leave school after the third grade because he could not afford the school fees. In May 2017 he went to work at the mine, at first picking up loose rocks and then joining a crew of five child workers in the tunnels, including his brother John Doe 12. Glencore, through CMKK, which it controlled, put Ismail in charge of this mining area. Ismail looked for children roaming around and put them to work for him. He had a large number of children in his gang of child miners. He directed their activities, took the proceeds of their work and paid them a small portion, just enough for subsistence living, and he kept the rest of the money they would have earned. He made clear to them that they could only work in the area for him and that if they didn't do what he told them, they would not be able to work at CMKK or the other mines in the area and would be left to starve. The young boys who worked for him, including James Doe 12, were terrified of Ismail and did what he told them. Ismail was in control of the area where James Doe 12 worked and died.

63.     On the day of the accident in May 2018, James Doe 12 went with his crew down a shaft of about 15 meters and then went into the tunnel. They entered a chamber and it collapsed on all of them. James Doe 12 and all the others died; only John Doe 12 survived. He woke up in a hospital where he was taken by men working

for Ismail, who paid the bill. John Doe 12 himself had been severely injured and can no longer work. His left leg and foot were crushed in the collapse. John Doe 12 went back to the mine but was unable to recover James Doe 12's body. John Doe 12 has five children he can no longer support due to his own inability to work.

64.     John Doe 13 brings this claim on his own behalf. He was born on February 16, 2001, and he went to school though the ninth grade. He dropped out because his family could not pay his school fees. In early 2015, he went to work in the Metalkol SA mine, which is owned by the Eurasian Resources Group (ERG), which then sells refined cobalt to, among others, Defendant Tesla and is a participant in the venture described in paragraphs 99-110, *infra*. At first, he was picking up rocks and selling them to Ahmed and Aza, two men on site who bought cobalt rocks from the miners. He then started working in the tunnels on a team of five. Working together they each earned $3-5 a day. On June 16, 2018, they were working as a team with three boys in the tunnel digging and two of them gathering and bagging the cobalt rocks. John Doe 13 was among the three diggers when the tunnel collapsed. The other two boys who were digging died on the spot. The two other boys on his team went to get help for John Doe 13. They dug him out and took him to the Methodist hospital in Kolwezi, where he stayed for two months. His left leg and hip were smashed. He was 17 years old when he was maimed at the mine. The doctors inserted an iron bar in his leg to hold the bone together. After two months they sent him home, but he had to go back to the hospital because the

flesh wounds got infected. To this day, the skin has not properly healed and continues to get infected, and he needs to have the iron bar removed from his leg. This would all cost about $5,000, and he does not have any money. He is in constant pain and can no longer walk on his injured leg.



John Doe 13

**B.   Former Child Miner Plaintiffs' Class Action Allegations**

65.    All of the Plaintiffs bring this action on behalf of themselves and all other similarly situated current and former child workers forced to engage in hazardous work mining cobalt for the end use of Defendants Apple, Alphabet, Dell, Microsoft, and Tesla. The members of the class have been forced to mine cobalt under hazardous conditions in the Haut-Katanga or Lualaba Provinces of DRC, which includes the mining center of Kolwezi.

66.    Plaintiffs bring this action individually, and pursuant to Fed. R. Civ. P. 23(a), 23(b)(2), and 23(b)(3), on behalf of the following class:

> All individuals during the period January 1, 2010 through the present who reside or did reside in the Haut-Katanga or Lualaba Provinces of DRC who were trafficked and/or forced to labor as children and perform hazardous work as defined by ILO Convention No. 182 (Art. 3) while under the age of 18 at an "artisanal" cobalt mine in the Lualaba Province of DRC that supplied cobalt to any of the Defendants.

67.    The class is so numerous that joinder of all members is impractical. Based on all objective research done on children working as artisanal cobalt miners in the Haut-Katanga or Lualaba Provinces of DRC, there is uniform agreement that there are tens of thousands of children who would qualify as class members.

68.    There are questions of law and fact common to the class. Key common questions include, but are not limited to, the following:

> a)     Whether Plaintiffs and Proposed Class Members were unlawfully trafficked or were forced as children to work in violation of 18 U.S.C. §§

1589, 1590, 1595, and 1596 as artisanal miners in cobalt mines that
supplied cobalt to any of the Defendants named herein?

b)      Whether Defendants benefited from participating in a venture
that relied on the trafficked or forced labor of children in violation of
international, federal, and District of Columbia law?

c)      Whether Defendants assisted in or contributed to the trafficking
or forced labor of Plaintiffs and Proposed Class Members by failing to
take adequate action to prevent and stop such practices in violation of
international, federal, and District of Columbia law?

d)      Whether injunctive relief can be fashioned to prevent further
trafficking of children and the forced use of their labor in cobalt mines
that supply cobalt to the Defendants named herein?

69.     Plaintiffs' claims are typical of the claims of the class. They seek redress
for the same conduct that has affected all class members and press legal claims which
are the same for all class members.

70.     Plaintiffs named herein will fairly and adequately represent the class. These
Plaintiffs do not have conflicts of interest with members of the class and have
retained counsel who are experienced in complex litigation, including class actions
and international litigation, who will vigorously prosecute this action.

71.     A class action is the superior method for adjudication of this controversy.
In the absence of a class action, courts will be unnecessarily burdened with multiple,

duplicative individual actions. Moreover, if a class is not certified, many meritorious claims will go without redress as individual class members will not be able to prosecute complex litigation against Defendants, some of the largest and wealthiest corporations in the world.

### C. Defendants Apple, Alphabet, Dell, Microsoft and Tesla Knowingly Use and Benefit From DRC Cobalt Mined by Forced Child Labor.

72.     Defendant Apple, Inc. is incorporated in Delaware and has its corporate headquarters in Cupertino, California. Apple does substantial and continuous business in the District of Columbia. Apple manufactures a number of devices that require cobalt mined in DRC, including the MacBook line of laptop computers, iPhones, iPads, Apple Watches and other such devices. Apple manufactures many of its products in China, where it has faced recent and ongoing scrutiny for manufacturing at sweatshop facilities that require workers to work long hours for little pay under difficult and stressful conditions.

73.     Among others, Apple obtains cobalt from some of the largest and worst mining operators in the DRC, including Kamoto Copper Company (KCC), Katanga Mining, MUMI (Mutanda Mining), CDM (Congo Dongfang Mining) and COMUS (Compagnie Miniere de Musonoi). KCC, MUMI and Katanga Mining are owned and controlled by Glencore, which sells cobalt to Umicore. Umicore processes the cobalt and then supplies refined cobalt to Apple and many other tech companies for

use in cobalt-containing batteries. CDM and COMUS are owned and controlled by Huayou Cobalt, which also sells battery materials to Apple, Dell, Microsoft, and many other tech companies.

74.     Apple knows the well-publicized fact that these two companies (Glencore and Huayou Cobalt) produce cobalt that includes cobalt mined under hazardous conditions by young children earning two or three U.S. dollars per day and, remarkably, in many cases even less than that, for risking their lives. In addition to all of the widely-available public reports of the horrible conditions facing child miners in the DRC cobalt sector, Apple has internal "corporate social responsibility" ("CSR") managers who have reported these conditions to Apple's top management. On information and belief, Apple fired at least one CSR manager who specifically reported on child miners in Apple's DRC cobalt supply chain and demanded that the company take action to address this problem. To this day, Apple has done nothing to correct this abhorrent situation in its supply chain. Apple is currently worth over one *trillion* U.S. dollars. Its annual revenue is 229 billion U.S. dollars.

75.     As part of the Amnesty Report, the Amnesty researchers asked Apple about children performing hazardous labor in the company's supply chain. Apple responded that it was "[c]urrently evaluating dozens of different materials, including cobalt, in order to identify labor and environmental risks as well as opportunities for Apple to bring about effective, scalable and sustainable change." Amnesty Report at 59. Amnesty observed, "Apple did not explain why it has not put in place due

diligence measures for cobalt until now, particularly since human rights risks associated with its extraction in the DRC are well documented. For example, the US government has issued warnings relating to child labour linked to the extraction of cobalt in the DRC since 2009." *Id.* (emphasis added).

76.     Defendant Alphabet, Inc. is a Delaware corporation headquartered in Mountain View, California, and it does substantial and continuous business in the District of Columbia. As part of a restructuring, on October 2, 2015, Alphabet became the parent company of its wholly-owned subsidiary Google. Using the Google name, Alphabet produces multiple devices including Nexus phones and tablets, Chromebook, Google Pixel smartphone, Google Home smart speakers, and various Pixelbooks. All of these devices include lithium ion batteries that use cobalt that is mined in the DRC.

77.     Among others, Alphabet obtains cobalt from one of the largest and worst mining operators in the DRC, KCC. KCC is owned and controlled by Glencore, which sells cobalt to Umicore. Umicore processes the cobalt and then supplies refined cobalt to Alphabet and many other tech companies for use in cobalt-containing batteries.

78.     Alphabet knows the well-publicized fact that KCC produces cobalt that includes cobalt mined under hazardous conditions by young children earning two or three U.S. dollars per day and, remarkably, in many cases even less than that, for risking their lives. Alphabet's current worth is estimated at 279.3 billion U.S. dollars.

Its founders Larry Page and Sergey Brin are worth 48.8 and 47.5 billion U.S. dollars, respectively.

79.     Defendant Dell Technologies Inc. is headquartered in Round Rock, Texas. Dell does substantial and continuous business in the District of Columbia. Dell manufactures several devices that require and use cobalt mined in DRC, including its laptops and tablets.

80.     Among others, Dell obtains cobalt from one of the largest and worst mining operators in the DRC, KCC. KCC is owned and controlled by Glencore, which sells cobalt to Umicore. Umicore processes the cobalt and then supplies refined cobalt to Dell and many other tech companies for use in cobalt-containing batteries. Dell also obtains cobalt from Huayou Cobalt mined by CDM.

81.     Dell knows the well-publicized fact that KCC and CDM produce cobalt that includes cobalt mined under hazardous conditions by young children earning two or three U.S. dollars per day and, remarkably, in many cases even less than that, for risking their lives. Dell's annual revenue is 78.7 billion U.S. dollars. Dell's Chairman and CEO, Michael Dell, is reported to have a net worth of 35 billion U.S. dollars.

82.     Defendant Microsoft, Inc. is headquartered in Redmond, Washington. Microsoft does substantial and continuous business in the District of Columbia. Microsoft manufactures several devices that require and use cobalt mined in DRC, including its laptops and tablets. Among others, Microsoft obtains cobalt from one

of the largest and worst mining operators in the DRC, KCC. KCC is owned and controlled by Glencore, which sells cobalt to Umicore. Umicore processes the cobalt and then supplies refined cobalt to Microsoft and many other tech companies for use in cobalt-containing batteries. Defendant Microsoft is also supplied with battery materials by CDM and COMUS, which are owned and controlled by Huayou Cobalt.

83.     Microsoft knows the well-publicized fact that KCC and CDM produce cobalt that includes cobalt mined under hazardous conditions by young children earning two or three U.S. dollars per day and, remarkably, in some cases even less than that, for risking their lives. Indeed, Microsoft's "FY19-Devices-Sustainability-at-Microsoft" disclosure[13] is particularly cynical and misleading. As to Umicore, Microsoft "discloses" that Umicore is "conformant" with Microsoft's sourcing requirements. This would come as a huge surprise to many Plaintiffs and others similarly situated who have been maimed or who had children killed at Umicore's cobalt source, Glencore's KCC mines. Further, Microsoft admits it still uses Huayou Cobalt after getting caught by Amnesty using this notoriously nonconformant supplier and now states that there is "outreach required" at Huayou Cobalt. The children maimed or killed by Huayou would surely say that more than outreach is required, and that Microsoft is criminally complicit in continuing to profit from

---

[13] http://aka.ms/devicessustainability

using Huayou Cobalt knowing that Huayou is willfully ignoring the law and allowing young children to die or become crippled mining cobalt. Microsoft's current net worth is 69.96 billion U.S. dollars. Microsoft's co-founder, Bill Gates, has an estimated net worth of 90 billion U.S. dollars.

84.    In responding to Amnesty Researchers, Microsoft conceded that it did not follow the OECD's guidance on tracing its cobalt supply chain. Microsoft responded to Amnesty that "we have not traced the cobalt used in Microsoft products through our supply chain to the smelter level due to the complexity and resources required." Amnesty Report at 60. Amnesty commented that it "does not consider this to be a convincing argument for not doing the required due diligence for DRC cobalt, particularly given the significant size and resources of the company, as well as its potential leverage over its suppliers." *Id.*

85.    Defendant Tesla, Inc. has its corporate headquarters in Palo Alto, California. Tesla does substantial and continuous business in the District of Columbia. Tesla manufactures electric cars and trucks that include large batteries requiring cobalt mined in DRC. Among others, Tesla obtains cobalt from one of the largest and worst mining operators in the DRC, KCC. KCC is owned and controlled by Glencore, which sells cobalt to Umicore. Umicore processes the cobalt and then supplies refined cobalt to Apple and many other tech companies for use in cobalt-containing batteries. Umicore processes the cobalt and then supplies refined cobalt to LG Chem, which supplies Tesla with cobalt for use in its cobalt-

containing batteries. On or about June 16, 2020, Defendant Tesla finalized an agreement with Glencore to obtain ownership of or exclusive rights to a major portion of its cobalt production in the DRC. Plaintiffs will seek discovery of this arrangement to determine the details and how this likely effects Tesla's direct liability for Glencore's past and future liability for injuries to certain Plaintiffs and members of the class. Tesla also obtains cobalt from the Eurasian Resources Group ("ERG") which operates cobalt mines in the DRC.

86.     Tesla knows the well-publicized fact that KCC and ERG produce cobalt that includes cobalt mined under hazardous conditions by young children earning two or three U.S. dollars per day and, remarkably, in many cases even less than that, for risking their lives. Tesla is currently worth 45 billion U.S. dollars. Tesla's CEO, Elon Musk, has a net worth of 22 billion U.S. dollars.

## IV.    CLAIMS FOR RELIEF

### COUNT I

### FORCED LABOR BY ALL PLAINTIFFS AGAINST ALL DEFENDANTS TVPRA, 18 U.S.C. §§ 1589 & 1595

87.     Plaintiffs incorporate by reference paragraphs 1 to 86 of this Complaint as if fully set forth herein.

88.     Defendants Apple, Alphabet, Dell, Microsoft, and Tesla all knowingly aided and abetted and benefitted from a system that forces impoverished and

vulnerable children, including the Plaintiffs and others similarly situated, to perform extremely hazardous work without safety equipment of any kind for less than subsistence wages in order to barely eke out a minimal human existence. But, as the facts relating to the fates of the Plaintiffs herein establish, many of them do not survive. The conditions in the cobalt mines are so dangerous and primitive that many children, and adult workers as well, regularly die in tunnel collapses, pit wall collapses, or from falling into unprotected shafts. Others, like many of the Plaintiffs, suffer serious injury and are maimed for life, unable to work again and unable to support themselves or their families. These injuries place immense pressure on families requiring additional children to work in cobalt mining to replace the lost earnings of the injured family member(s). Each of the Defendants has the power, resources and ability to free these child miners from their cycle of being forced to work in extremely dangerous conditions to supply cobalt to one of the richest and most profitable industries in the world. In addition, being exposed to cobalt is itself hazardous. The ILO has specifically found that cobalt mining in DRC is one of the Worst Forms of Child Labor under Convention No. 182 simply due to the health risks. Cobalt is a known health hazard and a respiratory disease caused by exposure to it, cobalt lung, is a form of pneumonia which causes coughing and can lead to permanent incapacity and death. The dangerous nature of the mining work is also an extreme example of a Worst Form of Child Labor Under Convention No. 182.

89.     Defendants Apple, Alphabet, Dell, Microsoft, and Tesla all gain significant financial advantage from their participation in the "artisanal" mining of cobalt. These companies receive cobalt, an essential element for the batteries powering their expensive gadgets, for a price that reflects that the cobalt was largely mined by children earning two or three U.S. dollars a day and, remarkably, in many cases even less than that, to unearth enough cobalt to supply tens of thousands of dollars' worth of expensive gadgets.

90.     Plaintiffs and the other child miners were victims of "forced labor" under § 1589 of the TVPRA, triggering liability under §§ 1589 and 1595. Plaintiffs herein and the other similarly situated children mining cobalt for the benefit of Defendants were all well below the age of consent, whether 16 or 18 years of age, when they were forced to work mining cobalt under extremely dangerous conditions. Based on the laws of the United States and the DRC, as well as universally accepted customary international law, these Plaintiffs, as a matter of law, lacked the ability to consent to perform the extremely hazardous work they were required to perform at the direction of employees or agents of Defendants' "venture," as described in paragraphs 99-110, *infra*. In all other areas of law where children could be exposed to harm, the law does not permit that decision to be left to children themselves, who are adjudged to be incapable of consent. The legal and policy concerns behind this universal rule apply with great force to the situation facing Plaintiffs, all minor children when they were injured or killed. Under any civilized system of law, they

could not consent to perform work that could and did kill or maim them. In other words, the "coercion" required of "forced labor" is inherently present when young children are put to work under extremely hazardous conditions.

91.     Defendants and the other members of the venture, as described in paragraphs 99-110, *infra*, knew there was a steady supply of children who lacked the capacity to consent. They knew the Plaintiffs herein and thousands of other children similarly situated were so desperate and so vulnerable that they could easily be manipulated to perform work that was so hazardous as to ultimately kill or maim them. Defendants and the other members of the venture knew this and took advantage of these children, condemning them to death or severe, permanent, and disabling injury.

92.     Not only were the child Plaintiffs too young to give their consent to perform extremely hazardous work, Defendants and the other members of the venture, as described in paragraphs 99-110, *infra*, knew they were especially vulnerable to dangerous manipulation. Plaintiffs had at most a few years of basic education because they were innocent victims of a corrupt and incompetent DRC government that imposed a school fee system on extremely poor people knowing it would force the children to drop out of school. Given the DRC government's corrupt connections to Glencore and Huayou, it is even plausible that the school fee enactment was designed to supply these mining companies with a steady stream of desperate child workers forced to risk almost certain death to avoid certain

starvation. These uneducated children were also living in extreme poverty and lived within families in which everyone was stricken by the hunger and misery of this poverty and the lack of options. Defendants and other members of the venture also knew that Plaintiffs had few alternatives to "artisanal" mining because it was by far the dominant sector in DRC's "copper belt" where Plaintiffs resided. Finally, Defendants and the other members of the venture knew that these children were so desperate they would do just about anything to earn a dollar to buy food. Ultimately they did – they sacrificed their health and lives to mine cobalt for the richest companies in the world for around a dollar a day.

93.     The conditions under which the Plaintiffs and other children were forced to work in mining cobalt demonstrate they were subjected to the main indicia of coercion and were victims of forced labor.[14] In addition to the fact that Defendants and other members of the venture, as described in paragraphs 99-110, *infra*, severely abused the vulnerability of the Plaintiffs and their inability to consent to risking their lives, Plaintiffs were also deceived by the agents or employees of the venture. None of the Plaintiffs were warned that they would almost certainly be killed or maimed if they mined cobalt for the venture, as all of them ultimately were. In addition, the

---

[14] The ILO, for example, has identified eleven indicators of forced labor: abuse of vulnerability, deception, restriction of movement, isolation, violence, intimidation and threats, retention of identity documents, withholding of wages, debt bondage, abusive living and working conditions, and excessive overtime. *ILO Indicators of Forced Labour*, Int'l. Labor Office (2012).

children were cheated out of the paltry wages they should have been paid. As previously alleged, Plaintiffs' cobalt bags were under-weighed, and they were falsely told the mined cobalt was of low quality. This allowed the buyers connected to the venture to regularly cheat them. Further, because the children were uneducated and afraid to speak out, most often the buyers connected to Defendants and their venture would pay the children a small, fixed amount for their work regardless of the volume or quality of cobalt mined.

94.     Many of the Plaintiffs worked a form of debt bondage where the buyers connected to the venture, as described in paragraphs 99-110, *infra*, would advance tools and sometimes food and then require the children to work off the debt. Further, in some cases, Plaintiffs' wages were withheld for weeks until they met certain conditions imposed by the agents or employees of the venture. Plaintiffs were routinely subjected to intimidation and threats, ranging from the constant threat that they would starve if they failed to work to the constant intimidation they suffered requiring them to provide the cobalt they mined to specific agents or employees of the venture if they wanted to be paid anything at all (and as noted, these agents or employees routinely cheated them).

95.     As has been alleged in detail, Plaintiffs were subjected to extremely abusive working conditions, conclusively demonstrated by the fact that all of the Plaintiffs were either killed or maimed as a result of the poor and hazardous working conditions. Plaintiffs were directed in performing these extremely dangerous tasks

by agents or employees of the venture. Plaintiffs, all children, were required to work excessive hours and were never compensated for overtime or provided any benefits. Indeed, when the Plaintiffs were killed or injured, the agents or employees of the venture did not even help with medical or funeral costs.

96.     Plaintiffs and the other child miners were uniformly and constantly required to perform "hazardous work" that qualifies as one of the "worst forms of child labor" within ILO Convention No. 182. Directing children to perform hazardous work should, as a matter of law, constitute "forced labor" under § 1589 of the TVPRA.

97.     Actual or threatened physical, mental, and financial harm are "serious harms" under § 1589(c)(2), which trigger liability under §§ 1589 and 1595. As Plaintiffs' allegations make clear, they first suffered from the threats of likely serious injuries and then, in fact, suffered actual serious, discernible physical injuries, including lacerations, bruises, infections, malnutrition, illness and death. These serious harms were such as to compel a reasonable person in the Plaintiffs' circumstances to work. Defendants and the other members of the venture knew that, if the Plaintiffs did not work as "artisanal" miners, they would not be able to find another job to support themselves or their families. Once the Plaintiffs started to work, they could not quit. If they did, they would certainly be unable to find other work, pay for food, or other necessities. Plaintiffs and tens of thousands of other children were compelled to keep working until they could not work any longer. In

this case, every single Plaintiff or Plaintiff's decedent worked for about a dollar a day until he was dead or maimed, clearly not something a reasonable person would do if not forced. Defendants and the other members of the venture knew or should have known about this systematic forced and abusive labor endured by Plaintiffs and tens of thousands of other children as well as the physical and other injuries caused by this abusive venture.

98.     All of these indications of "forced labor" subject Defendants and other members of the venture to liability under the TVPRA. Under §§ 1589 and 1595 of the TVPRA, Defendants Apple, Alphabet, Dell, Microsoft, and Tesla are liable for this demonstrated "forced labor" if they (1) participated in a venture; (2) knowingly "receiv[ed] anything of value" from the venture; and (3) knew or should have known that the venture had engaged in forced labor as defined by § 1589. As previously alleged, Defendants knowingly benefitted from forced child labor in the DRC cobalt mining industry and the three elements required for them to be liable under the TVPRA are easily satisfied in this case.

**The Cobalt Supply Chain Is a "Venture"**

99.     The cobalt supply chain to Defendants Apple, Alphabet, Dell, Microsoft, and Tesla, is a "venture" that exists for the purpose of maintaining a steady supply of cheap cobalt that is mined by children and poverty-stricken adults. The supply chain is, by design, hidden and secretive to allow all participants to profit from cheap

cobalt mined under extremely hazardous conditions by desperate children forced to perform extremely hazardous labor without safety equipment of any kind.

100.   The main drivers of the modern, tech-driven cobalt supply chain are Glencore/Umicore, which supply to all of the Defendants, and Zhejiang Huayou Cobalt Company Ltd (Huayou Cobalt), which certainly supplies to Defendants Apple, Dell and Microsoft, and probably other Defendants. As previously alleged, these are all notoriously bad actors on both human rights and environmental issues. Knowing that the tech boom was going to cause a major surge in demand for cobalt, these companies stepped in to dominate the market and develop reliable sources for DRC cobalt. Based on prior allegations, Defendants Apple, Alphabet, Dell, Microsoft, and Tesla certainly had knowledge that the cobalt they purchase from these companies is produced by global outlaws that think nothing of selling DRC cobalt mined by seriously exploited children. And when Tesla recently purchased a major stake in Glencore's DRC cobalt supply, it not only had that knowledge, but they had already been sued in this case in December 2019 and were on specific notice of the injuries to Plaintiffs herein and other children similarly situated who were mining cobalt for Glencore.

101.   There are no meaningful proposals made by any of the Defendants or the venture to address the crisis of forced child labor in their cobalt supply chain. Any claims made of a traceable cobalt supply chain from the DRC by use of "model sites," blockchain, or other technology, thereby allowing for a cobalt supply that is

free of child labor or other labor abuses are preposterous, as anyone who has spent even a small amount of time on the ground in the southeastern provinces of the DRC will know. Cobalt from numerous both industrial and artisanal sources is inevitably mixed at various stages in the supply chain, including transport by truck from mining sites and buying houses to refiners in the DRC, or within refiners in the DRC prior to export for additional processing by companies like Umicore and Huayou Cobalt. Again, this is intentional on the part of the supply chain venture to obscure the supply chain and allow companies like Umicore and Huayou to maintain the illusion that some of their cobalt in not mined by children.

102.    Glencore is well-known in human rights and environmental circles as a scorched earth mining company that operates outside of internationally recognized human rights and environmental standards and will do whatever it can get away with to maximize profits. Glencore is currently under investigation around the world for its blatant corruption and bribery schemes, particularly in the DRC, which allows it to get away with knowingly benefiting from killing and maiming child miners on a regular basis. In July 2018, the United States opened a Foreign Corrupt Practices Act investigation of Glencore's dealings in DRC and issued a subpoena for documents. In late 2019, the Office of Fraud in Great Britain opened an investigation against Glencore for, among other things, bribing officials in the DRC to acquire companies that the DRC had a stake in and to obtain mining concessions

for cobalt.[15] On or about June 19, 2020, right as Defendant Tesla was purchasing a major stake in Glencore's DRC cobalt operations, the Swiss government opened a criminal investigation into Glencore's corrupt practices in the DRC. Most of Glencore's corrupt deals in the DRC involved Dan Gertler, an Israeli mining executive who had strong connections in the DRC, particularly with its notoriously corrupt former President, Joseph Kabila. This and other systematic corruption in the DRC cobalt sector is well-documented in Project Enough's report, *Powering Down Corruption Tackling Transparency and Human Rights Risks from Congo's Cobalt Mines to Global Supply Chains* by Annie Callaway (October 2018).[16] Glencore's modern cobalt supply chain providing Defendants Apple, Alphabet, Dell, Microsoft, and Tesla with DRC cobalt was born in crime.

103.    Glencore's partner in supplying Defendants Apple, Alphabet, Dell, Microsoft, and Tesla with DRC cobalt is Umicore, a Belgian company first incorporated in 1906 as *Union Minière du Haut Katanga* (UMHK) specifically for the purpose of profiting from the exploitation of natural resources in King Leopold's private colony, the Congo Free State. UMHK was a major participant in the horrific pillaging and exploitation of the Congo by King Leopold and the companies

---

[15] The U.K. Office of Fraud has recently launched a formal investigation of Glencore's corruption and bribery. *See* https://seekingalpha.com/news/3523988-u-k-fraud-office-opens-probe-of-suspected-bribery-glencore.

[16]    https://enoughproject.org/wp-content/uploads/PoweringDownCorruption_Enough_Oct2018-web.pdf

associated with him. As previously noted, the absolute horrors of this period are well-documented in Adam Hochschild's book, ***King Leopold's Ghost***, as well as in Joseph Conrad's ***Heart of Darkness***. Umicore and Glencore formally agreed to form a venture in which Glencore would provide Umicore with DRC cobalt from, among other places, Glencore's mines operated by KCC, MUMI and Katanga Mining, where most of the Plaintiffs were severely injured or killed, and Umicore would whitewash this blood-stained cobalt and sell it to among others, Defendants Apple, Alphabet, and Microsoft, as well as LG Chem (which supplies Defendants Dell and Tesla). All of these companies were formally locked in a "venture" that was established to mine cobalt under horrific conditions using young children to perform hazardous labor. The venture was also established to preserve the existing obscure supply chains of cobalt in DRC to create plausible deniability for all involved.  In the refining process, Umicore intentionally mixes the cobalt mined by children working under hazardous conditions with other cobalt and takes other steps to impair the traceability of DRC cobalt to give Defendants Apple, Alphabet, Dell, Microsoft, and Tesla plausible deniability as to the source of the cobalt they purchase.

104.    Similarly, Huayou Cobalt and its mining arms in DRC, CDM and COMUS, is a notorious operator and plays a major role in managing the purchase of cobalt from child miners, including Plaintiffs, who are forced to work under hazardous, severely dangerous, conditions. As the <u>Mail on Sunday</u> observed,

Chinese middle-men working for the Congo Dongfang Mining Company have the stranglehold in DRC, buying the raw cobalt brought to them in sacks carried on bicycles and dilapidated old cars daily from the Katanga mines. They sit in shacks on a dusty road near the Zambian border, offering measly sums scrawled on blackboards outside – £40 for a ton of cobalt-rich rocks – that will be sent by cargo ship to minerals giant Zhejiang Huayou Cobalt in China and sold on to a complex supply chain feeding giant multinationals.

Challenged by the Washington Post about the appalling conditions in the mines, Huayou Cobalt said "it would be irresponsible" to stop using child labour, claiming: "It could aggravate poverty in the cobalt mining regions and worsen the livelihood of local miners."[17]

105.    Indeed, in a March 3, 2017 Washington Post article, Todd Franken reported that Defendant Apple had temporarily suspended purchasing DRC cobalt from Huayou Cobalt precisely because of continued documentation that young children were performing hazardous work mining cobalt for the company.[18] This was in response to the devastating September 30, 2016 Washington Post article, *Cobalt Pipeline, Tracing the path from deadly hand-dug mines in Congo to consumers' phones and laptops*,[19] also by Todd Franken, that specially found that Huayou Cobalt was indifferent to whether children were performing hazardous work mining cobalt. Defendant Apple's announcement that it was "suspending" purchasing cobalt from Huayou Cobalt was just another Apple public relations maneuver; in its Apple

---

[17] Washington Post (September 30, 2016), https://www.washingtonpost.com/business/economy/companies-respond-to-questions-about-their-cobalt-supply-chains/2016/09/30/910f94de-7b51-11e6-bd86-b7bbd53d2b5d_story.html
[18] https://www.washingtonpost.com/news/the-switch/wp/2017/03/03/apple-cracks-down-further-on-cobalt-supplier-in-congo-as-child-labor-persists/
[19] https://www.washingtonpost.com/graphics/business/batteries/congo-cobalt-mining-for-lithium-ion-battery/?tid=lk_inline_manual_3

Supplier Responsibility 2018 Smelter and Refiner List, Apple continues to list "Zhejiang Huayou Cobalt Co., Ltd." as a supplier of DRC cobalt and claims to have conducted a "third party audit." As previously alleged, Microsoft also purchases battery materials from Huayou Cobalt and provides inaccurate and misleading information about whether Huayou Cobalt continues to use child miners exposed to the worst forms of child labor as defined by ILO Convention No. 182.

106.    Confirming that Huayou was using child labor to mine cobalt, on or around June 4, 2020, Huayou announced that in response to this lawsuit, originally filed on December 16, 2019, its customers, presumably including Defendants herein, demanded that Huayou stop selling cobalt mined by children. The implication was that Huayou and its customers, including Defendants herein, were planning to cut and run, leaving the injured children and families of dead children to fend for themselves. One of the key objectives of this case is to get health care and other assistance to the families that have suffered serious injury while mining cobalt for Defendants' and other members of the venture. Plaintiffs demand that Defendants stop using child labor, but this must be accompanied by assistance to the families and changes in working conditions moving forward. In any event, there is no way that any of the Defendant companies can credibly deny their responsibility for and their ability to stop the abuse of children mining cobalt in the DRC.

107.    Apple, Microsoft, Dell, and Huayou Cobalt may manipulate the various middlemen of their supply chain to deceive and distract the public, but the parties

remain participants in a "venture" to ensure that, no matter what the actual facts are about the ongoing use of children performing hazardous work to harvest DRC cobalt for Huayou Cobalt, Apple, Dell, and Microsoft will have a steady supply of cobalt from Huayou Cobalt. As the Amnesty Report concluded at 59,

> Huayou Cobalt is failing to respect international human rights as required by the UN Guiding Principles and it is not implementing the five-step framework recommended in the OECD Guidance, despite the fact that the OECD Guidance has been recognised by the Chinese Chamber of Commerce of Metals Minerals & Chemicals Importers & Exporters as the "recognised international framework" to conduct mineral supply chain due diligence. For all the reasons stated above, there is a high risk that Huayou Cobalt is buying (and subsequently selling) cobalt from artisanal mines in which children are engaged in hazardous labour, one of the worst forms of child labour, and where adult workers work in unsafe and hazardous conditions.

108.     The other participants in the "venture" with Huayou Cobalt almost certainly include some of the other Defendants. However, these companies are flat out lying about their participation in this venture because of Huayou Cobalt's horrible reputation and record. As the Amnesty Report concluded at 65,

> [m]any companies denied sourcing cobalt from the DRC and/or Huayou Cobalt – though they are listed as customers in documents of other companies who are listed as buying from Huayou Cobalt – but did not explain whom they sourced cobalt from. Considering the predominance of cobalt from the DRC in the global market, it is unlikely that all these large companies are not sourcing any cobalt from the DRC. Downstream companies should already be publicly disclosing who their smelters are, as well as their due diligence practices. However, none provided enough detail for Amnesty International to be able to verify their cobalt supply chain or whether they were undertaking all five steps of the OECD Guidance in relation to cobalt.

The Amnesty Report also observed at 59,

[a]ny company which sources processed ore, and its customers along the supply chain, referred to as "downstream" companies, should be able to trace its suppliers up to the smelters (such as CDM and Huayou Cobalt), and should be fully aware of the due diligence practices of the smelter company. In their letters to Amnesty International, most of these downstream companies referred to general codes of conduct and internal policies, which require suppliers to respect human rights and not employ children. Many of these companies stated that they have a zero tolerance policy when it comes to child labour in their supply chains. However, they did not provide details of specific investigations and checks that they have undertaken to identify and address child labour in their cobalt supply chains. None of the companies said that they had been in touch with Huayou Cobalt, prior to receiving our letter.

109.    The position of Defendant Microsoft is typical of disingenuous positions taken by all of the Defendants who are participants in the deliberately obscured cobalt supply chain venture. As the Amnesty Report states at 64-65,

Microsoft said it was already supporting an organization that was tackling human rights abuses, including child labour, in artisanal mines in southern DRC. As for tracing the mineral through its supply chain to the smelter, Microsoft stated that in practice, "tracing metals such as cobalt up through multiple layers of our supply chain is extremely complex." Microsoft wrote that creating such a tracing mechanism would require "a large degree of vertical and cross-industry collaboration." Yet, no further details were provided on actual attempts made by the company to trace this chain in practice. Compared to the supply chain due diligence that many companies have started to develop in relation to 3T and gold, Amnesty's research has shown that cobalt is no more difficult. In fact, research carried out in this report suggests that the trade in cobalt is more concentrated since so much of it is sourced from the DRC.

110.    The cobalt supply chain venture was developed by the participating companies, including Defendants Apple, Alphabet, Dell, Microsoft, and Tesla, to allow them to harness a steady supply of cheap DRC cobalt knowing of the brutal and illegal conditions in DRC cobalt mining. Defendants and other members of the

venture now control at least 80-85 percent of the DRC cobalt supply chain. They have more than sufficient control to implement any necessary changes to stop the horrific abuses of child miners, like Plaintiffs herein and others similarly situated. Since forming or joining the venture to obtain a steady supply of cheap DRC cobalt, Defendants have had the power, resources and ability to make any necessary changes in the operations of cobalt mining in the DRC, but have chosen not to do so in order to avoid any corresponding costs. Defendants also have not taken steps to improve the horrible conditions in DRC cobalt mining because they do not want to be publicly identified with the death and maiming of adult and child artisanal miners, including Plaintiffs herein. The companies are intentionally failing to exercise the required due diligence and make improvements to the conditions in the mines because it is in their financial interest to hide behind the "venture" they have formed and obtain a steady supply of cheap cobalt without taking public responsibility for how it is produced. Defendant Tesla has taken this to a new level by purchasing a major stake in cobalt produced in the DRC by Glencore without apparently requiring that Glencore take effective measures to stop the abuse of child miners and offer reparations to those, like Plaintiffs herein, who have been killed or maimed in very foreseeable mine collapses. Defendants will not take action to improve conditions in their cobalt supply chain venture until they are compelled to do so, which is what Plaintiffs herein are seeking.

### **Defendants knowingly received something of value from the "venture."**

111.    Defendants Apple, Alphabet, Dell, Microsoft, and Tesla are all buying DRC cobalt that was mined in significant part by young children performing hazardous work for two to three U.S. dollars per day or less. As per public reports, *see* paragraphs 6-10, *supra*, Defendants all have knowledge of the forced labor, dangerous conditions, and extremely low pay provided to child cobalt miners.

112.    Further, all of these Defendants have announced bogus programs to ensure children are not working in their cobalt supply chains, but none of them actually perform the required due diligence to verify whether children are mining cobalt in their supply chains. Defendants Apple, Alphabet, Dell, Microsoft, and Tesla not only are knowingly benefiting from the cheap labor of child cobalt miners, but are knowingly obscuring the true facts of their cobalt supply chains to extend as long as possible the time they continue to benefit from the cheap exploited labor of Plaintiffs and others similarly situated before consumer pressure, legal action, or government intervention forces them to protect the children, provide safe conditions and fair wages for adult workers, and ensure environmentally sustainable mining practices.

**Defendants knew or should have known that their respective ventures had engaged in forced labor as defined by § 1589.**

113.   As previously alleged, Defendants Apple, Alphabet, Dell, Microsoft, and Tesla all had specific knowledge from public reports that the DRC cobalt that they were buying within their ventures with Glencore/Umicore and/or Huayou Cobalt, as well as other sources, was mined in significant part by young children performing hazardous work for two to three U.S. dollars per day and, remarkably, in many cases even less than that. *See, e.g.*, paragraphs 6-11, *supra*.

114.   Further, as previously alleged in paragraph 14, *supra*, Plaintiffs' research team across 2017 to 2019 easily observed, interviewed, and photographed children performing hazardous work mining cobalt under horrific conditions. They interviewed and photographed a parade of children maimed by cobalt mining accidents at mines owned, operated, and/or controlled by the suppliers to both ventures, Glencore/Umicore and Huayou Cobalt. Unless Defendants have never had a representative visit the cobalt mining areas of the DRC, which is extremely unlikely, then Defendants themselves have observed the same horrible conditions under which children mine cobalt for them under extremely hazardous conditions. Indeed, as previously alleged, Defendants all have internal or external CSR reports on their cobalt supply chains that have specifically flagged the horrors of child miners in the companies' cobalt supply chains.

115.   Defendants Apple, Alphabet, Dell, and Microsoft, among other companies, have all made significant financial contributions to PACT, a Washington-D.C.-based non-profit organization working in the mining areas of DRC that purports to be working on ending forced child labor in cobalt mining. Upon information and belief, representatives of these companies have visited the mining areas of DRC to observe PACT's programs, as well as other mining sites, and acquired knowledge about the horrible conditions for child miners in their supply chains. Further, given the significant amounts of money each of them provided to PACT, the companies must be getting detailed reports of conditions facing child miners in the DRC cobalt mines. These companies cannot be paying to try to stop a system of forced child labor that they do not have specific knowledge of. PACT's model program at a single cobalt mine, Mutoshi, has had no impact on the use of forced child labor in Defendants' supply chain ventures. On the contrary, Plaintiff's research team was given a tour of the Mutoshi site by senior staff and was informed that cobalt mined by child labor is regularly mixed into the supply of cobalt mined on-site, cobalt mined by child labor is regularly mixed into this same supply through purchases at buying houses en route to smelting facilities in Lubumbashi, and that there is absolutely no tagging of cobalt bags mined at this site, contrary to claims made by PACT. In truth, the program serves as a cynical poster child to give the companies supporting it an opportunity to hide the reality of the use of forced child labor to mine cobalt for them.

116.    As for Defendant Tesla, it is a huge consumer of DRC cobalt and must, by now, have sent representatives to follow up on the widespread public reports of child labor in the DRC supply chain. Indeed, as reported in the <u>Washington Post</u>, "Tesla, more than any other automaker, has staked its reputation on 'ethically sourcing' every piece of its celebrated vehicles . . . [regarding child labor in the cobalt supply chain] Kurt Kelty, Tesla's director of battery technology, said in March at a battery conference in Fort Lauderdale, Fla. 'And we need to take it even more seriously. So, we are going to send one of our guys there.'" [20] If Tesla has not yet sent a representative to verify the specific factual reports of horrific forced child labor in its cobalt supply chain, then it certainly "should have known" these facts. Tesla certainly knew the facts when it recently purchased a major stake in Glencore's DRC supply chain.

117.    As Amnesty reported, "[m]any of these companies stated that they have a zero tolerance policy when it comes to child labour in their supply chains. Some of these companies refer to contractual requirements that they impose on direct suppliers to ensure that they adhere to these types of prohibitions. Others refer to specific provisions that the company has developed in relation to the child's rehabilitation into education and/or financial support should this be found in factories. However, they did not provide any information on whether these policies

---

[20]https://www.washingtonpost.com/graphics/business/batteries/congo-cobalt-mining-for-lithium-ion-battery/?tid=lk_inline_manual_3

are being implemented in relation to the DRC cobalt supply chain." Amnesty Report at 64-65. ***Defendants Apple, Alphabet, Dell, Microsoft, and Tesla all have specific policies claiming to prohibit child labor in their supply chains. Their failure to actually implement these policies to stop forced child labor in cobalt mining is an intentional act to avoid ending their windfall of getting cheap cobalt mined by forced child labor of which they are acutely aware.***

118.   As Amnesty reported, "[t]he Organisation for Economic Co-operation and Development (OECD) has provided a practical guide for how such due diligence [for cobalt supply chain] should be carried out through its Due Diligence Guidance for Responsible Supply Chains of Minerals from Conflict-Affected and High-Risk Areas (OECD Guidance). In 2010, 34 OECD member states approved the OECD Guidance. The International Conference on the Great Lakes Region (ICGLR), a regional body, including the DRC, then endorsed it. Nine non-OECD members have also adhered to the OECD Guidance. More recently, China recognized the guidance as an international standard for conducting responsible mineral supply chain due diligence. The widespread adoption of the OECD Guidance points to a growing global recognition that companies should carry out responsible supply chain practices when sourcing minerals from conflict affected or high-risk areas." Amnesty Report at 28 (footnotes omitted). The failure of any of the Defendants to implement known measures to address forced child labor in their

cobalt supply chains is a willful failure by Defendants to avoid ending their windfall of getting cheap cobalt mined by forced child labor of which they are acutely aware.

119.    If any of Defendants Apple, Alphabet, Dell, Microsoft, and Tesla do not have specific knowledge of forced child labor in their cobalt supply chain ventures, then this is an extreme form of willful ignorance and they certainly "should have known" that their supply chain ventures are dependent upon the cheap labor of forced child labor.

## COUNT II

**TRAFFICKING WITH RESPECT TO FORCED LABOR BY
ALL PLAINTIFFS AGAINST ALL DEFENDANTS
TRAFFICKING VICTIMS PROTECTION ACT, 18 U.S.C. §§ 1590 & 1595**

120.    Plaintiffs reallege and incorporate by reference all paragraphs 1-119 previously alleged herein.

121.    As previously alleged, Plaintiffs were all forced to mine cobalt under extremely hazardous conditions for the benefit of Defendants and the other members of the venture.  All or virtually all of the Plaintiffs were recruited, provided, harbored, or obtained to work at cobalt mine sites by an agent or employee of the cobalt supply chain venture. Based on facts available at this time, the following 11 Plaintiffs or Plaintiffs' decedents have specifically made this claim in their allegations herein: James Doe 2, John Doe 3, John Doe 4, John Doe 6, Joshua Doe 2, John Doe 7, John Doe 9, John Doe 10, John Doe 11, James Doe 3, and James Doe 12.

Plaintiffs or Plaintiffs' decedents have stated a claim for trafficking forced labor.

122.    Under § 1590 of the TVPRA, entities that "recruit, harbor, transport, provide, or obtain" a child's labor through the methods proscribed in § 1589, including victims of forced labor such as Plaintiffs herein, are legally liable for trafficking child labor.  As previously alleged in paragraphs 99-110, all Defendants are key members of a "venture" that operates the cobalt supply chain and are liable for the injuries caused to the Plaintiffs by the venture's forced labor system that recruits, provides, harbors and/or obtains forced labor from children at their cobalt mines.

123.    18 U.S.C. § 1595 of the TVPRA authorizes the victim of a § 1590 violation to bring a civil action against the perpetrator, and "whoever knowingly benefits, financially or by receiving anything of value from participation in a venture" that he "knew or should have known" engaged in the violation. Here, as previously alleged in paragraphs 111-112, Defendants and other members of the venture knowingly benefited from the cheap labor supplied by Plaintiffs and others similarly situated that provided a steady supply of the cobalt essential to their products. Based on their key roles in the cobalt supply chain venture, the Defendants herein are liable for trafficking forced child laborers.

## COUNT III

### UNJUST ENRICHMENT BY ALL PLAINTIFFS
### AGAINST ALL DEFENDANTS

124.   Plaintiffs reallege and incorporate by reference all paragraphs 1 to 123 previously alleged herein.

125.   Wholly apart from Defendants' liability under the TVPRA as previously established, to the detriment of Plaintiffs and the Class Members, Defendants Apple, Alphabet, Dell, Microsoft, and Tesla have been and continue to be unjustly enriched as a result of the wrongful conduct alleged herein. Defendants have unjustly benefited by receiving DRC cobalt at prices reflecting that a significant portion of Defendants' cobalt supply chain is mined by children performing extremely hazardous work for two to three U.S. dollars per day and, in many cases, even less than that. Defendants are knowingly benefiting and being unjustly enriched from the unlawful use of forced child labor in their cobalt supply chains at the expense of Plaintiffs and the Class Members who are being paid below subsistence wages to risk their lives and health to mine cobalt for Defendants. Further, as previously alleged, the cobalt supply chain "ventures" Defendants participate in use deception and misrepresentations to hide the true facts of Defendants' abuse of Plaintiffs and the Class Members to continue to obtain unfairly low-priced cobalt. Between the parties, it would be unjust and inequitable for Defendants Apple, Alphabet, Dell, Microsoft, and Tesla, already incredibly rich companies run by extremely rich

executives, to get a windfall and retain the benefits from their abuse of Plaintiffs and the Class Members.

126.    Accordingly, Plaintiffs seek full restitution of enrichment, benefits, and ill-gotten gains Defendants Apple, Alphabet, Dell, Microsoft, and Tesla acquired as a result of the wrongful conduct alleged herein.

## COUNT IV

### NEGLIGENT SUPERVISION BY ALL PLAINTIFFS AGAINST ALL DEFENDANTS

127.    Plaintiffs incorporate by reference paragraphs 1 to 126 as if set forth fully herein.

128.    When engaging in the wrongful conduct alleged herein, the owners and controllers of the cobalt supply chain ventures, Glencore/Umicore and Huayou Cobalt that supplied Defendants Apple, Alphabet, Dell, Microsoft, and Tesla with cobalt as specifically alleged herein acted as Defendants' agents. Defendants exercised control over their actions and provided direction as to the quality and quantity of cobalt supplied to them.

129.    Defendants Apple, Alphabet, Dell, Microsoft, and Tesla knew or reasonably should have known that the cobalt supply chain ventures operated by Glencore/Umicore and Huayou Cobalt were using forced child labor to mine cobalt

and that Plaintiffs and the Class Members would suffer injury if forced to work in such a system.

130.   Defendants had the authority to supervise, prohibit, control, and/or regulate their cobalt supply chain. Indeed, Defendants claim to the public that their policies and practices were allegedly designed to stop the use of forced child labor and prevent the acts and omissions described herein from occurring. Further, as previously alleged, Defendants had a duty under generally accepted international standards to prevent the use of forced child labor in their cobalt supply chains. Defendants also had the ability to cease purchasing DRC cobalt until such time as the violations alleged herein were stopped and/or prevented.

131.   Defendants knew or reasonably should have known that, unless they intervened to protect Plaintiffs and properly supervise, prohibit, control and/or regulate the conduct described herein, Plaintiffs would suffer the injuries alleged herein.

132.   Defendants failed to exercise due care by failing to supervise, prohibit, control or regulate its employees and/or agents, and also failed to make appropriate investigations into the possible negative impact on Plaintiffs and others similarly situated who were forced to mine cobalt for Defendants' suppliers. As a direct and proximate result of Defendants' negligent supervision, Plaintiffs have suffered and continue to suffer injuries entitling them to damages in an amount to be ascertained at trial.

## COUNT V

## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
## ALL PLAINTIFFS AGAINST ALL DEFENDANTS

133.    Plaintiffs incorporate by reference paragraphs 1 to 132 of this Complaint as if set forth fully herein.

134.    By intentionally and continuously participating in cobalt supply chain ventures that rely upon using Plaintiffs and members of the class as forced child labor, Defendants Apple, Alphabet, Dell, Microsoft, and Tesla engaged in outrageous conduct which went beyond all bounds of decency.

135.    By supporting and enabling a system that relies on forced child labor for higher profits, and that allows children to become maimed or to die in cobalt mining accidents, Defendants committed acts which were intended to cause Plaintiffs to suffer severe emotional distress. In the alternative, Defendants engaged in the conduct with reckless disregard of the probability of causing Plaintiffs to suffer severe emotional distress. Plaintiffs were present at the time this outrageous conduct occurred and Defendants knew that Plaintiffs or others similarly situated would be present.

136.    Defendants' conduct was the cause of Plaintiffs' severe emotional distress and physical damage.

137.    As a direct and proximate result of Defendants' conduct, Plaintiffs have suffered damages in an amount to be ascertained at trial.

94

## VI.   DEMAND FOR JURY TRIAL

138.   Plaintiffs demand a trial by jury on all issues so triable.

## VII.   PRAYER FOR RELIEF

139.   WHEREFORE, Plaintiffs pray this Court will enter an order:

a)   Entering judgment in favor of each of the Plaintiffs on all counts of the Complaint;

b)   Awarding each of the Plaintiffs monetary damages, subject to proof and in an amount to be determined at trial, including but not limited to fees and costs paid, debts incurred, and wages promised but not paid;

c)   Awarding each of the Plaintiffs consequential damages, including but not limited to the loss of assets and of educational and business opportunities as a result of Defendants' illegal conduct;

d)   Awarding each of the Plaintiffs damages for the mental anguish and pain and suffering Plaintiffs experienced as a result of being forced to labor against their will in horrific conditions and subjecting them to serious injuries and death;

e)   Awarding each of the Plaintiffs punitive and exemplary damages;

f)   Awarding Plaintiffs any and all other damages allowed by law according to proof to be determined at time of trial in this matter;

g)       Awarding Plaintiffs reasonable attorneys' fees and costs;

h)       Award all Plaintiffs injunctive relief, disgorgement of all profits resulting from these unfair business practices alleged herein such that restitution is made to the general public;

i)       Ordering Defendants Apple, Alphabet, Dell, Microsoft, and Tesla to create a fund, in an amount to be determined at trial, to fund appropriate medical care for Plaintiffs and members of the class who were injured while mining cobalt for Defendants, conduct medical monitoring for negative health impacts for Plaintiffs and members of the class who were exposed to cobalt and other toxic chemicals while mining cobalt for Defendants, and clean up the environmental impacts caused by Defendants' use of suppliers for cobalt that failed to take any steps to protect the environment where they were mining for cobalt; and

j)       Awarding such other relief as the Court deems just and equitable.

Respectfully submitted this 26th day of June 2020

s/ *Terrence P. Collingsworth*
Terrence P. Collingsworth
Executive Director
INTERNATIONAL RIGHTS ADVOCATES
    621 Maryland Ave. NE
    Washington, D.C. 20002
    202-543-5811
    tc@iradvocates.org
Attorneys for Plaintiffs
